ERIC GRANT
Deputy Assistant Attorney General
VANESSA R. WALDREF (D.C. Bar No. 989692)
Vanessa.R.Waldref@usdoj.gov
LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
Environmental Defense Section
Environment & Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Suite 4.149
Washington, D. C.  20002
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK, and the DELAWARE RIVERKEEPER, MAYA VAN ROSSUM,<br><br>             Plaintiffs,<br><br>                 v.<br><br>ANDREW R. WHEELER, in his official capacity as the Administrator of the United States Environmental Protection Agency, et al.,<br><br>             Defendants. | Case No. 2:20-cv-03412<br><br>**DEFENDANTS' MOTION TO DISMISS** |

Pursuant to Fed. R. Civ. P. 12(b)(1) and Local Civil Rule 7-1, Defendants Andrew R.

Wheeler, in his official capacity as Administrator of the United States Environmental Protection

Agency and the United States Environmental Protection Agency (collectively, "EPA"), file this

motion to dismiss the complaint filed by Delaware Riverkeeper Network and the Delaware

Riverkeeper, Maya Van Rossum (collectively, "Plaintiffs") in this action (Dkt. No. 1)

1    (hereinafter, the "Complaint"). The grounds for the motion are set forth in the attached
2    supporting memorandum of law.

3
4    Respectfully submitted,                ERIC GRANT
                                            Deputy Assistant Attorney General
5    Date: September 14, 2020               U.S. Department of Justice
                                            Environment & Natural Resources Division
6

7
8                                           *s/ Vanessa R. Waldref*
                                            VANESSA R. WALDREF (D.C. Bar No. 989692)
9                                           Vanessa.R.Waldref@usdoj.gov
                                            LESLIE M. HILL (D.C. Bar No. 476008)
10                                          Leslie.Hill@usdoj.gov
                                            Environmental Defense Section
11                                          Environment & Natural Resources Division
                                            United States Department of Justice
12                                          4 Constitution Square
                                            150 M Street, NE
13                                          Suite 4.149
                                            Washington, D. C.  20002
14                                          Telephone (202) 514-0375
                                            Facsimile (202) 514-8865
15

16

17                                          *Attorneys for Defendants*

18   Of counsel:
19
     James Curtin
20   Alexander Mullee
     Office of General Counsel
21   U.S. Environmental Protection Agency

22

23

24

25

26

27

28

ERIC GRANT
Deputy Assistant Attorney General
VANESSA R. WALDREF (D.C. Bar No. 989692)
Vanessa.R.Waldref@usdoj.gov
LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
Environmental Defense Section
Environment & Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Suite 4.149
Washington, D. C.  20002
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK, and the DELAWARE RIVERKEEPER, MAYA VAN ROSSUM, <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW R. WHEELER, in his official capacity as the Administrator of the United States Environmental Protection Agency, et al., <br><br> Defendants. | Case No. 2:20-cv-03412 <br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 2

        A.   Statutory Background ............................................................................. 2

        B.   Regulatory Background .......................................................................... 4

III.    STANDARD OF REVIEW ................................................................................ 4

IV.     ARGUMENT ..................................................................................................... 5

        A.   This Case is Not Ripe for Review......................................................... 5

             1.   Absent Special Circumstances, a Regulation such as the
                  Certification Rule Is Only Subject to APA Review in a
                  Challenge to a Particular Application of the Regulation. ............... 6

             2.   No Special Circumstances Justify Direct Review of the
                  Certification Rule. ...................................................................... 12

        B.   In The Absence Of A Live Dispute Over the Concrete, Project-Specific
             Application of the Certification Rule, Plaintiffs Lack Standing. ............ 13

V.      CONCLUSION................................................................................................ 17

i

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Gardner*,
   387 U.S. 136 (1967)...................................................................................6, 7, 8

*Aetna Life Insurance Co. of Hartford, Connecticut v. Haworth*,
   300 U.S. 227 (1937).............................................................................................5

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006).............................................................................................5

*Armstrong World Industries v. Adams*,
   961 F.2d 405 (3d Cir.1992)................................................................................6

*Ass'n for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Center
   Board of Trustees*,
   19 F.3d 241 (5th Cir. 1994) ..............................................................................16

*Babbitt v. United Farm Workers National Union*,
   442 U.S. 289 (1979).............................................................................................6

*Califano v. Sanders*,
    430 U.S. 99, 105 (1977)......................................................................................6

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016)...........................................................................................5

*CASA de Md., Inc. v. Trump*,
   No. 19-2222, 2020 WL 4664820 (4th Cir. Aug. 5, 2020) ......................................17

*Clapper v. Amnesty International USA*,
   568 U.S. 398 (2013)...............................................................................5, 14, 17

*Dooley v. Wetzel*,
   957 F.3d 366 (3d Cir. 2020)..............................................................................11

*Electric Bond & Share Co. v. SEC*,
   303 U.S. 419 (1938).............................................................................................6

*Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*,
   28 F.3d 1268 (D.C. Cir. 1994) ..........................................................................17

*Felmeister v. Office of Attorney Ethics*,
   856 F.2d 529 (3d Cir. 1988)..............................................................................12

ii

*Finkelman v. Nat'l Football League*,
  810 F.3d 187 ...................................................................................................... 12

*Fund for Animals, Inc. v. U.S. Bureau of Land Management*,
  460 F.3d 13 (D.C. Cir. 2006) ......................................................................... 8, 12

*Gardner v. U.S. Bureau of Land Management*,
  638 F.3d 1217 (9th Cir. 2011) ............................................................................ 8

*Kokkonen v. Guardian Life Insurance Co. of America*,
  511 U.S. 375 (1994) ............................................................................................. 5

*Lane v. Holder*,
  703 F.3d 668 (4th Cir. 2012) ............................................................................ 17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................... 4, 13, 14

*Lujan v. National Wildlife Federation*,
  497 U.S. 871 (1990) ...................................................................................... 6, 13

*Nat'l Ass'n of Home Builders v. EPA*,
  667 F.3d 6 (D.C. Cir. 2011) .............................................................................. 16

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ............................................................................. 6, 7, 8, 12

*Nextel Communications of Mid-Atlantic, Inc. v. City of Margate*,
  305 F.3d 188 (3d Cir. 2002) ................................................................................ 6

*Norton v. Southern Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ............................................................................................... 8

*Ohio Forestry Association v. Sierra Club*,
  523 U.S. 726 (1998) ....................................................................................... 8, 12

*Peachlum v. City of York, Pennsylvania*,
  333 F.3d 429 (3d Cir. 2003) ................................................................................ 6

*Philadelphia Federation of Teachers, American Federation of Teachers, Local 3, AFL-CIO v.
  Ridge*,
  150 F.3d 319 (3d Cir. 1998) ......................................................................... 10, 11

*Protectmarriage.com-Yes on 8 v. Bowen*,
  752 F.3d 827 (9th Cir. 2014) ......................................................................... 8, 10

iii

*Puget Soundkeeper Alliance v. Wheeler*,
  No. C15-1342-JCC, 2019 WL 6310562 (W.D. Wash. Nov. 25, 2019) ............................ 15, 16

*Reno v. Catholic Social Services, Inc.*,
  509 U.S. 43 (1993) ................................................................................................ 5, 7, 12

*Sherwin-Williams Co. v. County of Delaware, Pennsylvania*,
  968 F.3d 264 (3d Cir. 2020) ................................................................................................ 11

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................................ 13, 14, 16

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ................................................................................................................ 4

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009) ................................................................................. 13, 14, 15, 16

*Taylor Investment, Ltd. v. Upper Darby Township*,
  983 F.2d 1285 (3d Cir.1993) .............................................................................................. 5

*Texas v. United States*,
  523 U.S. 296 (1998) ................................................................................................ 10, 11

*Thomas v. Anchorage Equal Rights Commission*,
  220 F.3d 1134 (9th Cir. 2000) ........................................................................................ 5, 10

*Thomas v. Union Carbide Agricultural Products Co.*,
  473 U.S. 568 (1985) .......................................................................................................... 10

*University of Medicine & Dentistry of New Jersey v. Corrigan*,
  347 F.3d 57 (3d Cir. 2003) ................................................................................................ 6

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982) .......................................................................................................... 5

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) .......................................................................................................... 15

*Wilderness Society, Inc. v. Rey*,
  622 F.3d 1251 (9th Cir. 2010) .......................................................................................... 16

*Wilmac Corp. v. Bowen*,
  811 F.2d 809 (3d Cir. 1987) .............................................................................................. 11

iv

*Wyatt, Virgin Islands, Inc.*, v. *Gov't of the Virgin Islands By and Through the Virgin Islands Dep't of Labor*,
  385 F.3d 801 (3d Cir. 2004)..........................................................................................5

## Statutes

33 U.S.C. § 1251..........................................................................................................2

33 U.S.C. § 1251(a)......................................................................................................2

33 U.S.C. § 1251(b)......................................................................................................3

33 U.S.C. § 1311(a)......................................................................................................3

33 U.S.C. § 1341..........................................................................................................1

33 U.S.C. § 1341(a)(1)...........................................................................................1, 3, 4

33 U.S.C. § 1341(d)...................................................................................................3, 4

33 U.S.C. § 1362(7)......................................................................................................3

Pub. L. No. 91-224, 84 Stat. 108-110 (1970) ..............................................................4

## Rules

Fed. R. Civ. P. 12(b)(1)................................................................................................1

## Code of Federal Regulations

40 C.F.R. pt. 121..........................................................................................................4

40 C.F.R. § 121.4(a)...................................................................................................12

40 C.F.R. § 121.6........................................................................................................12

## Federal Register

36 Fed. Reg. 22,369 (Nov. 25, 1971)...........................................................................4

84 Fed. Reg. 44,080 (Aug. 22, 2019)........................................................................2, 4

85 Fed. Reg. 42,210 (July 13, 2020).....................................................................1, 2, 4

1

**<u>Executive Order</u>**

Executive Order No. 13,868, 84 Fed. Reg. 15,495 (Apr. 10. 2019) ................................................ 4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

The Court should dismiss the Complaint because this case is not ripe, and Plaintiffs lack standing to pursue it. At issue in this case is a new EPA regulation that governs water quality certifications under Section 401 of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1341. Under Section 401, a federal agency may not issue a permit or license to conduct any activity that may result in a discharge into waters of the United States unless the state or authorized tribe where the discharge would originate first issues a Section 401 water quality certification. Some of the federal licenses and permits subject to Section 401 include: CWA discharge permits issued by EPA or the U.S. Army Corps of Engineers; hydropower licenses issued by the Federal Energy Regulatory Commission; and bridge permits issued by the U.S. Coast Guard. The state or tribe may either verify that the permit or license complies with existing water quality requirements and grant the certification, grant the certification with conditions "necessary to insure compliance with applicable water quality requirements," deny certification, or it may waive the certification requirement.

The CWA provides that states and authorized tribes must act on request for section 401 water quality certifications within "within a reasonable period of time (which shall not exceed one year)." 33 U.S.C. § 1341(a)(1). A state or authorized tribe may waive the certification voluntarily, or by failing or refusing to act within the established reasonable time period. States and authorized tribes make their decisions to grant, grant with conditions, or deny certification requests primarily by assuring that the federally-licensed or permitted activity will comply with applicable water quality standards, effluent limitations, new source performance standards, toxic pollutant restrictions and other appropriate water quality requirements of state or tribal law. If the state or authorized tribe grants the certification with conditions, those conditions become a part of the federal permit or license. But if the state or tribe denies certification, then the federal agency may not issue the license or permit.

On August 22, 2019, EPA's proposed rule, entitled Updating Regulations on Water Quality Certification, was published in the Federal Register. 84 Fed. Reg. 44,080-122 (Aug. 22, 2019). On June 13, 2020, following an extensive notice-and-comment rulemaking including

1

public meetings, the final rule was published in the Federal Register. 85 Fed. Reg. 42,210 (July 13, 2020) ("Certification Rule").

Plaintiffs, an environmental and community organization and its leader, seek judicial review of the Certification Rule under sections 706(2)(A) and (C) of the Administrative Procedure Act ("APA"). They allege that the Rule exceeds the EPA's statutory authority and is arbitrary and capricious or unsupported by the record. Thus, they ask the Court to vacate the rule.

But Plaintiffs' claims are not ripe, nor do they have standing to assert them. Where, as here, there is no statutory provision providing for direct review of a new regulation, that regulation is not ordinarily ripe for judicial review under the APA until the scope of the controversy has been reduced by application of the regulation in some concrete action that harms or threatens to harm a plaintiff. Here, the Certification Rule does not directly regulate Plaintiffs and Plaintiffs have not identified an instance where the Rule has even been applied, much less a concrete project where the Rule was applied to their detriment. Thus, Plaintiffs' challenge is not ripe, and the Court must dismiss it for lack of subject matter jurisdiction.

Likewise, Plaintiffs do not have Article III standing to press their claims because they have failed to identify an injury in fact. Again, Plaintiffs have failed to identify any planned or even proposed activities where the Certification Rule will be applied, much less applied in a way that would result in their feared harms. Thus, the harms they allege, such as loss of recreational uses of waters or reduced ability to participate in certification proceedings, are highly speculative, attenuated, and contingent upon future events that are also speculative—not imminent or concrete.

Plaintiffs' claims are not ripe for review, and they lack standing to bring this challenge. For these reasons, the Court should dismiss Plaintiffs' complaint.

## II.     BACKGROUND

### A.     Statutory Background

Congress enacted the CWA, 33 U.S.C. §§ 1251 et seq., with the objective "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," *id.* § 1251(a),

while declaring its policy to "recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution," *id.* § 1251(b). The Act prohibits "the discharge of any pollutant by any person," *id.* § 1311(a), to a subset of the Nation's waters identified as the "navigable waters," which "means the waters of the United States," *id.* § 1362(7).

Section 401 of the Act falls within "Title IV--Permits and Licenses" and is entitled "Certification." It requires that:

> Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate, or, if appropriate, from the interstate water pollution control agency having jurisdiction over the navigable waters at the point where the discharge originates or will originate, that any such discharge will comply with the applicable provisions of sections [301, 302, 303, 306, and 307] of this Act.

33 U.S.C. § 1341(a)(1). The certification is commonly referred to as a "section 401 water quality certification."

Under section 401, a certifying authority may grant, grant with conditions, deny or waive certification in response to a request from a project proponent. Certifying authorities may also add to a certification "any effluent limitations and other limitations, and monitoring requirements" necessary to assure compliance. *Id.* § 1341(d). These additional provisions must become conditions of the federal license or permit should the federal agency issue it. *Id.* A certifying authority may deny certification if it determines that the discharge from the proposed activity will not comply with the applicable sections of the CWA and appropriate requirements of state law. *Id.* If a certifying authority denies certification, the federal license or permit shall not issue. *Id.* A certifying authority may waive certification by "fail[ing] or refus[ing] to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request." *Id.* § 1341(a)(1).

3

1

2

### B.      Regulatory Background

3       EPA issued its previous regulations on water quality certifications in 1971, pursuant to

4   section 21(b) of the Federal Water Pollution Control Act of 1948, as amended, Pub. L. No. 91-

5   224, 84 Stat. 108-110 (1970). 36 Fed. Reg. 22,369, 22,487 (Nov. 25, 1971) (codified at 40

6   C.F.R. pt. 121); *see also* 85 Fed. Reg. at 42,211. The 1971 regulations did not "reflect the 1972

7   amendments to the FWPCA (commonly known as the Clean Water Act or CWA), which created

8   section 401, despite the fact that there were changes to the relevant statutory text." 85 Fed. Reg.

9   at 42,211. On April 10, 2019, the President signed Executive Order 13,868, Promoting Energy

10   Infrastructure and Economic Growth (the "Executive Order"), which required EPA to engage

11   with states, tribes, and federal agencies to update the Agency's outdated guidance and

12   regulations, including the 1971 certification framework. 84 Fed. Reg. 15,495 (Apr. 15, 2019).

13   Thus, EPA signed a proposed rule on August 8, 2019. *Proposed Rule*, 84 Fed. Reg. 44,080

14   (Aug. 22, 2019). The final Certification Rule was published on July 13, 2020, and became

15   effective on September 11, 2020. The Executive Order also requires that other federal agencies

16   initiate a rulemaking, if necessary, within 90 days of finalization of the Certification Rule, to

17   ensure their CWA Section 401 regulations are consistent.

### III.    STANDARD OF REVIEW

18       On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court must

19   determine whether the complaint sets forth allegations sufficient to establish the court's

20   jurisdiction over the subject matter of the claims for relief. Because federal courts are courts of

21   limited jurisdiction and may hear cases only to the extent expressly provided by statute, the

22   first and fundamental question presented by every case is whether the court has jurisdiction to

23   hear it. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("jurisdiction

24   [must] be established as a threshold matter"). Where subject matter jurisdiction does not exist,

25   "the court cannot proceed at all in any cause." *Id.* (internal quotation marks omitted).

26   Plaintiffs bear the burden of establishing that the court has subject matter jurisdiction. *Lujan v.*

27   *Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Kokkonen v. Guardian Life Insurance Co. of*

28   *America*, 511 U.S. 375, 377 (1994). "[W]hen a federal court concludes that it lacks subject-

4

matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

## IV.   ARGUMENT

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.' " *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016), *as revised* (Feb. 9, 2016) (quoting U.S. Const., Art. III, § 2); *see Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir. 2000). Effectuated by a cluster of overlapping doctrines— including standing and ripeness—the case-or controversy requirement serves both to maintain the separation of powers and to ensure that legal issues "will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *see also Clapper v. Amnesty International USA*, 568 U.S. 398, 408-09 (2013). Here, well-established Article III principles as applied in the context of APA review—and as articulated in multiple Supreme Court cases—demonstrate that Plaintiffs' facial challenge to the 2020 Rule is not justiciable, because it is not ripe and because Plaintiffs lack standing. As explained below, Plaintiffs' challenge to the Certification Rule is justiciable only in the context of a challenge to a specific application of the Rule in which the issues are ""definite and concrete," not "hypothetical or abstract." *Wyatt, Virgin Islands, Inc.*, v. *Gov't of the Virgin Islands By & Through the Virgin Islands Dep't of Labor*, 385 F.3d 801, 806 (3d Cir. 2004) (quoting *Aetna Life Insurance Co. of Hartford, Connecticut v. Haworth*, 300 U.S. 227, 240 (1937)). Plaintiffs do not bring such a challenge.

### A.   This Case is Not Ripe for Review.

In the absence of a live dispute over the application of the Certification Rule to a particular project or decision, Plaintiffs' challenge is not ripe. Ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57, n.18 (1993) (citations omitted); *see also Taylor Investment, Ltd. v. Upper Darby Township*, 983 F.2d 1285,

1290 n. 6 (3d Cir.1993) (citing *Armstrong World Industries v. Adams*, 961 F.2d 405, 411 n.12
(3d Cir.1992)). For a suit to be ripe within the meaning of Article III, it must present 'concrete
legal issues, presented in actual cases, not abstractions.'" *Electric Bond & Share Co. v. SEC*,
303 U.S. 419, 443 (1938); *see Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 434 (3d
Cir. 2003) (requiring that the parties' dispute be "definite and concrete") (quoting *Babbitt v.
United Farm Workers National Union*, 442 U.S. 289, 298 (1979) (citation omitted)).

1.      **Absent Special Circumstances, a Regulation such as the Certification
        Rule Is Only Subject to APA Review in a Challenge to a Particular
        Application of the Regulation.**

To determine whether administrative actions are ripe for judicial review, courts apply a
two-part test, balancing: (1) "the fitness of the issues for judicial decision" with (2) "the
hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387
U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105
(1977); *accord The University of Medicine & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57,
68 (3d Cir. 2003).

Supreme Court precedent recognizes that agency regulations are ordinarily subject to
judicial review only as part of a challenge to a particular application of the regulation.  The
ripeness doctrine is designed "to prevent the courts, through avoidance of premature
adjudication, from entangling themselves in abstract disagreements over administrative policies,
and also to protect the agencies from judicial interference until an administrative decision has
been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park
Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (internal quotation omitted);
*see also Nextel Communications of Mid-Atlantic, Inc. v. City of Margate*, 305 F.3d 188, 192-93
(3d Cir. 2002). In *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) ("*NWF*"), the
Supreme Court explained:

> Under the terms of the APA, [a plaintiff] must direct its attack against some
> particular "agency action" that causes it harm. Some statutes permit broad
> regulations to serve as the "agency action," and thus to be the object of judicial
> review directly, even before the concrete effects normally required for APA
> review are felt. Absent such a provision, however, a regulation is not ordinarily
> considered the type of agency action "ripe" for judicial review under the APA

6

1
2
3

until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.

4

*Id*. at 891.

5   Subsequent decisions of the Supreme Court solidify this principle. In *Reno v. Catholic*

6   *Social Services, Inc.*, 509 U.S. 43 (1993), the Court applied *NWF* in rejecting, as unripe, a

7   challenge to regulations issued by the Immigration and Naturalization Service. Those

8   regulations would be applied in individual agency adjudications to determine whether an alien

9   was eligible for legalization, a particular form of immigration relief. The Court explained that

10   newly promulgated regulations may be ripe for judicial review outside the context of any

11   particular affirmative application by the agency only if the regulations present plaintiffs with

12   "the immediate dilemma to choose between complying with newly imposed, disadvantageous

13   restrictions and risking serious penalties for violation." *Id*. at 57 (citing, *inter alia*, *Abbott*

14   *Laboratories*, 387 U.S. at 152-53). The Court cited *NWF* for the proposition that, if such a

15   dilemma is absent, "a controversy concerning a regulation is not ordinarily ripe for review under

16   the [APA] until the regulation has been applied to the claimant's situation by some concrete

17   action." *Id*. at 58. Noting that the regulations at issue "impose[d] no penalties for violating any

18   newly imposed restriction," the Court held that the plaintiffs' challenge would not be ripe until

19   they had taken the steps necessary to cause the regulations to be applied to their own

20   applications for legalization. *Id*. at 58-59.

21   Similarly, in *National Park Hospitality Association v. Department of the Interior*, the

22   Court considered a facial challenge to a National Park Service regulation. 538 U.S. 803. That

23   regulation provided that its concession contracts "are not contracts within the meaning of" the

24   Contract Disputes Act. *Id*. at 806. The Court concluded that the case was not ripe. Applying the

25   two-part *Abbott Laboratories* test, the Court found that there would be no undue hardship from

26   withholding review. The rule did not require any person to do or refrain from doing anything,

27   did not affect the plaintiff-concessioner's primary conduct, and did not impose serious penalties

28   for violations. *Id*. at 809-10. The Court also held that the case was not fit for review, even

though the question presented was purely legal and the rule constituted "final agency action," because the Court concluded that further factual development would "significantly advance our ability to deal with the legal issues presented." *Id*. at 812 (citation omitted). Accordingly, the Court held that "judicial resolution of the question presented here should await a concrete dispute about a particular concession contract." *Id*.

Likewise, in *Ohio Forestry Association v. Sierra Club*, 523 U.S. 726 (1998), the Court held that a facial challenge to a forest plan for a particular National Forest was not ripe for judicial review. *Id*. at 732-37. The Court explained that judicial review should instead focus on the application of the plan's provisions in agency decisions approving site-specific projects at the National Forest. *Id*. And in *Fund for Animals, Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13 (D.C. Cir. 2006), the D.C. Circuit held that a facial challenge to the Bureau of Land Management's policies expressed in various strategy documents and a budget request was not reviewable under the APA. *Id*. at 18-21. There, the challenged action "represent[ed] the Bureau's latest plan to comply with its broad statutory mandate." *Id*. at 21. The D.C. Circuit found that "as a practical matter," the budget request and the policies embedded within were not a "substantive rule" that "require[d] the parties affected to adjust their conduct as soon as the rule is issued." *Id*. at 20. The D.C. Circuit thus rejected plaintiff's attack on a "broad 'programmatic' statement that [*NWF*] keeps from our review." *Id*.; *see generally Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 67 (2004) ("The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA."); *Gardner v. U.S. Bureau of Land Management*, 638 F.3d 1217, 1221 (9th Cir. 2011) (same).

This case is not ripe for both constitutional and prudential reasons.[1] Plaintiffs' issues are not yet fit for judicial decision, nor would Plaintiffs suffer any hardship from this Court withholding consideration until Plaintiffs' claims are concrete and not abstract.

---

[1] If the constitutional requirement is not satisfied, the court lacks jurisdiction, and need not consider the prudential component of the ripeness inquiry. *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014).

1    Like the cases discussed above, Plaintiffs present a facial challenge and are not (nor

2 could they be at this point in time) litigating a concrete dispute with EPA or any federal agency

3 that issues permits or licenses. Thus, the Certification Rule is not fit for judicial review now. In

4 addition, Plaintiffs have failed to identify how delaying consideration of the Certification Rule

5 would harm or threaten them in a concrete manner.

6    Plaintiffs' sole reference to a project that might implicate the Certification Rule is a

7 single, vague sentence alleging that the "Delaware River estuary . . . is also vulnerable to the

8 siting of natural gas export facilities—in fact, an export facility in Gibbstown, New Jersey is

9 currently moving through the federal permitting process." Compl. ¶ 18. The section 401 water

10 quality certification for the project Plaintiffs' mention was issued by the state certifying

11 authority over a year ago. Plaintiffs are currently challenging the U.S. Army Corps of

12 Engineers' subsequent issuance of a Section 404 permit.[2] Any alleged harm to Plaintiffs could

13 not therefore, flow from EPA's Certification Rule that only became effective on September 11,

14 2020 because the section 401 certification has already been issued. Aside from that fleeting

15 reference, Plaintiffs have not identified an imminent project that is covered by the Certification

16 Rule and requires a CWA Section 401 certification. *See infra* Argument Part IV.A. Instead,

17 Plaintiffs seem to allege—with no explanation—that *any* application of the Certification Rule

18 will somehow harm their organizations or members in a way that makes this matter ripe for

19 review. That is incorrect.

20    At this stage, it is entirely speculative whether and how implementation of any provision

21 of the Certification Rule could harm Plaintiffs or their members. Like the regulation at issue in

22 *National Park Hospitality Association*, the Certification Rule does not govern Plaintiffs'

23 primary conduct. Nor do they face penalties for non-compliance. Plaintiffs have wholly failed to

24 identify any "concrete action" threatening their interest in specific waters within the Delaware

25 River watershed, i.e., a proposed project for which a section 401 water quality certification is

26

27 ───────────────

28 [2] *See Delaware Riverkeeper Network v. U.S. Army Corps of Engineers,* Case No. 1:20-cv-04824 (D.N.J.).

1   sought and in which Plaintiffs purport to have an interest. Thus, their challenge is not ripe for

2   review. Moreover, deferring judicial review until a concrete action occurs will not cause

3   hardship to Plaintiffs because they have not identified an immediate threat or a burden imposed

4   upon them. *See Philadelphia Federation of Teachers, American Federation of Teachers, Local*

5   *3, AFL-CIO v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998) (explaining that the "determination

6   whether any such hardship is cognizable turns on whether the challenged action creates a 'direct

7   and immediate' dilemma for the parties, such that the lack of pre-enforcement review will put

8   the plaintiffs to costly choices)); *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d at 839

9   ("Whether we view injury in fact as a question of standing or ripeness, 'we consider whether the

10  plaintiff[ ] face[s] a realistic danger of sustaining a direct injury as a result of the statute's

11  operation or enforcement . . . or whether the alleged injury is too imaginary or speculative to

12  support jurisdiction.'") (quoting *Anchorage Equal Rights Commission*, 220 F.3d at 1139

13  (internal quotation marks and citations omitted)).

14       Because Plaintiffs are not challenging the Certification Rule as applied, their allegations

15  of hardship are too abstract and hypothetical to justify judicial review presently. *See* Compl.

16  ¶¶ 19, 285, 287, 289, 291 (alleging, for example, that limits on the scope of state review will

17  somehow deprive Plaintiffs of information about proposed projects, that the Rule creates risk

18  that a future unspecified federal project or license will degrade the Delaware River watershed,

19  and that the Rule will impact Plaintiffs' ability to "participate in the certifying authority's

20  pollution control efforts"). Simply put, Plaintiffs cannot say beyond mere speculation that any of

21  those hardships will come to pass in the context of any particular project that implicates the

22  Certification Rule.

23       Plaintiffs' alleged harms are not only lacking in concreteness, but they are also

24  contingent upon future events that might not occur. "A claim is not ripe for adjudication if it

25  rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur

26  at all.' " *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide*

27  *Agricultural Products Co.*, 473 U.S. 568, 580-581 (1985)); *Dooley v. Wetzel*, 957 F.3d 366, 377

28  (3d Cir. 2020) (same); *Philadelphia Federation of Teachers,* 150 F.3d at 323 (courts must

consider "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all"). For example, Plaintiffs contend—again without identifying a particular project subject to the Certification Rule or a particular waterbody within the Delaware River watershed—that, under the Certification Rule, "the waters of the Delaware River writ large will be more vulnerable to degradation." Compl. ¶ 285. Plaintiffs simply speculate – without explanation – that the Certification Rule will cause unspecified pollution that could degrade water quality in the Delaware River watershed. Such speculation is not sufficient to support premature judicial review.

Plaintiffs also vaguely suggest that the value of their "real property, both residential and commercial," is "imminently and adversely harmed by the Certification Rule." *Id*. ¶ 289. But Plaintiffs' allegations are pure conjecture. They provide no information regarding the particular real estate nor information about any proposed, federally permitted or licensed project that would degrade the nearby water quality and thereby decrease their property value. Such allegations are far too speculative to make this challenge ripe for review. *See Texas v. United States*, 523 U.S. at 300; *Wilmac Corp. v. Bowen*, 811 F.2d 809, 813 (3d Cir. 1987) (holding that "[m]ere economic uncertainty affecting the plaintiff's planning is not sufficient to support premature review").

Plaintiffs fare no better with their allegation that they rely on the Delaware River watershed for drinking water and that the Certification Rule creates a risk that the quality of their drinking water will be degraded by federally permitted or licensed project. Compl. ¶ 291. Plaintiffs fail to identify the source of drinking water that could be impaired by a hypothetical project. Nor do Plaintiffs have any way of predicting what future permitting or licensing of projects will occur that may impact the Delaware River. In addition to being entirely speculative, such a scenario is based on numerous, contingent acts by multiple third-parties that may never occur. *See Finkelman v. Nat'l Football Leagu*e, 810 F.3d 187 at 194; *Sherwin-Williams Co. v. County of Delaware, Pennsylvania*, 968 F.3d 264, 272 (3d Cir. 2020). These remote allegations of harm are simply insufficient to make this dispute fit for judicial review.

Plaintiffs face no present hardship from waiting to challenge the Certification Rule if and when those contingent future events do occur.

The Certification Rule does not govern Plaintiffs' primary conduct, nor does it put them in the position of facing penalties for noncompliance. *Nat'l Park Hospitality Ass'n*, 538 U.S. at 809-10; *Reno v. Catholic Social Services, Inc.*, 509 U.S. at 57; *Fund for Animals, Inc.*, 460 F.3d at 20. And deferring judicial review until a concrete action occurs will not cause hardship. For a party's "hardship to be sufficient to overcome prudential interests in deferral, that hardship must be both immediate and significant." *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 537 (3d Cir. 1988). As explained above and *infra* Argument Part IV.B, Plaintiffs have not identified an immediate threat or a burden imposed upon them. Indeed, the Certification Rule became effective only three days ago and it will be several months or even years before a project will be certified or before certification could be denied or waived under the Rule.[3] *See Ohio Forestry Ass'n,* 523 U.S. at 735 ("The ripeness doctrine reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs of—even repetitive—postimplementation litigation.").

Plaintiffs' facial challenge to the Certification Rule is not fit for review now, and Plaintiffs will suffer no meaningful hardship from waiting to challenge the Rule after it is applied in a concrete context.

### 2.     No Special Circumstances Justify Direct Review of the Certification Rule.

Under *NWF*, one of two special circumstances—a special statutory provision authorizing direct review of agency regulations within a specified period after their promulgation, or a "substantive rule" requiring immediate adjustment of primary conduct under threat of serious

---

[3] Under the Certification Rule, at least 30 days in advance of submitting a request for a section 401 water quality certification, the project proponent must request a pre-filing meeting with the certifying authority, i.e., state or tribe. 40 C.F.R. § 121.4(a). The certifying authority then has a reasonable period of time, set by the federal licensing or permitting agency, which shall not exceed one year, to take action on the certification request. *Id*. § 121.6.

12

penalties—is ordinarily required to "permit broad regulations to serve as the 'agency action' and thus to be the object of judicial review directly." 497 U.S. at 891.

Neither of those special circumstances is present here. There is no statutory provision providing for immediate judicial review. Likewise, as explained below, the Certification Rule "neither require[s] nor forbid[s] any action on the part of" Plaintiffs or their members. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). In short, Plaintiffs are not harmed by the Certification Rule. Rather, assuming arguendo that any of the impacts prophesized by Plaintiffs actually occur, they will flow from implementation of the Certification Rule in connection with actual projects. Challenges to federal agency issuance of permits or licenses will continue to take place. Reliance by those federal agencies on the procedures set forth in the Certification Rule will also occur, and Plaintiffs can challenge the agencies' implementation of the Rule when the agencies take specific final actions in issuing permits or licenses (subject, of course, to demonstrating a justiciable injury, etc.).

### B.       In The Absence Of A Live Dispute Over the Concrete, Project-Specific Application of the Certification Rule, Plaintiffs Lack Standing.

Constitutional standing under Article III has three elements. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). Where, as here, Plaintiffs are not the object of the challenged rule, "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. at 562 (citations and internal quotation marks omitted). The elements of standing must exist at the time the complaint is filed. *Id.* at 570 n.5 ("standing is to be determined as of the commencement of suit."). And when "a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo*, 136 S. Ct. at 1547 (citations and internal quotation marks omitted).

A straightforward application of the Supreme Court's decision in *Summers v. Earth Island Institute*, demonstrates that Plaintiffs lack standing to bring a facial challenge to the Certification Rule because they have not established an injury in fact. To establish an injury in

1  fact, Plaintiffs or their members must have "suffered an invasion of a legally protected interest

2  that is concrete and particularized and actual or imminent, not conjectural or hypothetical."

3  *Spokeo,* 136 S. Ct. at 1548 (citation and internal quotation marks omitted).

4      Plaintiffs face a high bar here—one that they cannot surmount. Like the respondents in

5  *Summers*, Plaintiffs challenge a rule that "neither require[s] nor forbid[s] any action" on their

6  part. 555 U.S. at 493. Also, Plaintiffs are not "the object" of the government action they

7  challenge. *Defenders of Wildlife*, 504 U.S at 562. Plaintiffs "can demonstrate standing only if

8  application of the [Certification Rule] by the Government" threatens to impose on them an

9  " 'injury in fact' that is concrete and particularized." *Summers*, 555 U.S. at 493-494. That threat

10  of "'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc*., 136 S. Ct.

11  at 1548. It also "must be actual and imminent, not conjectural or hypothetical." *Summers*, 555

12  U.S. at 493. To meet the imminence requirement, a "threatened injury must be *certainly*

13  *impending*"; allegations of "*possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409

14  (internal quotation marks omitted) (emphasis in original). Combined, these requirements ensure

15  that the alleged injury is not too speculative for Article III purposes, *see id*. at 409, and "that

16  there is a real need to exercise the power of judicial review in order to protect the interests of the

17  complaining party," *Summers*, 555 U.S. at 493 (internal quotation marks omitted).

18      In *Summers*, the Supreme Court applied these deep-rooted standing principles to a suit

19  brought by environmental organizations challenging Forest Service's regulations that

20  established general procedural rules for administrative review of some future projects (much

21  like the Certification Rule). 555 U.S. at 490-91. The organizations challenged both the

22  procedural regulations themselves and a particular application of the regulations to the Burnt

23  Ridge Project. *Id.* at 491. By the time the case came to the Supreme Court, the parties had

24  settled their dispute concerning the Burnt Ridge Project, leaving only the plaintiffs' challenge to

25  the regulations in the abstract. *Id.* at 491-92, 494. The Supreme Court held that the organizations

26  did not have standing to challenge the regulations after the settlement because they failed to

27  demonstrate that the government had applied the regulations to any other particular project that

28

1   would imminently harm one of their members. *Id.* at 492-96. According to the Supreme Court,

2   there is

> 3   no precedent for the proposition that when a plaintiff has sued to challenge the
> 4   lawfulness of certain action or threatened action but has settled that suit, he retains
> 5   standing to challenge the basis for that action (here, the regulation in the abstract), apart
>     from any concrete application that threatens imminent harm to his interests.

6   *Id.* at 494. "Such a holding," the Supreme Court continued, "would fly in the face of Article

7   III's injury-in-fact requirement." *Id.*

8       Just as in *Summers*, Plaintiffs' challenge presents precisely the sort of judicial review—

9   untethered to a concrete factual context—that flies in the face of Article III. Plaintiffs assert that

10  the Certification Rule will result in future project approvals that make the Delaware River

11  watershed "vulnerable to degradation" and will limit Plaintiffs' access to information and public

12  participation in the certification process. *See* Compl. ¶¶ 19, 285, 291. But none of these

13  hypothetical future projects has been developed. *See Puget Soundkeeper Alliance v. Wheeler*,

14  No. C15-1342-JCC, 2019 WL 6310562, at *7 n.8 (W.D. Wash. Nov. 25, 2019) (ruling that

15  environmental plaintiff lacked standing to challenge CWA regulation when he did not identify

16  "any project, proposed or existing, that is causing or will soon cause the harms he is concerned

17  about"). And Plaintiffs offer only speculation about how, when, and where the Certification

18  Rule will be applied. *See* Compl. ¶¶ 287-291. These speculative claims are followed by further

19  conjecture about how the Certification Rule as applied to possible future projects would result in

20  injury. *Id.*; *see supra* Argument Part IV.A (reference to project not subject to Certification Rule

21  does not suffice for injury-in-fact). But it is not sufficient for Plaintiffs to recite that they are

22  harmed because the Certification Rule *could* allegedly cause *other* federal agencies to apply the

23  Rule to *future* certifications in an attenuated chain of events that *could* lead to environmental

24  harm. Even before *Summers*, it was well established that allegations of "possible future injury

25  do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

26      It makes no difference that Plaintiffs allege a sort of procedural injury—namely, that

27  their interests will be adversely affected because the Certification Rule restricts their members'

28  participation in certification determinations. Compl. ¶ 291. In *Summers*, the plaintiffs similarly

    argued that they had standing because the challenged regulations would affect their ability to

    influence agency actions through public comment. 555 U.S. at 496. The Supreme Court rejected

15

that argument, holding that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Id.* "Only a person who has been accorded a procedural right to protect *his concrete interests* can assert that right . . ." *Id.* (internal quotation omitted) (emphasis in original); *accord Wilderness Society, Inc. v. Rey*, 622 F.3d 1251, 1255 (9th Cir. 2010). Because the plaintiffs in *Summers* failed to challenge a concrete application of the regulations, the Supreme Court found that the alleged procedural violation was not justiciable. *Summers*, 555 U.S. at 497. This Court should reach the same conclusion here because Plaintiffs likewise do not challenge a concrete application of the Certification Rule. Absent some concrete application of the Rule, Plaintiffs face no harm that is "certainly impending" or better than speculative. Moreover, the Certification Rule does not directly impact public participation.

Plaintiffs fare no better with their allegations based on organizational standing. In that regard, Plaintiffs contend that the Certification Rule will deprive them "of information they otherwise would have received about the impact of Federally licensed or permitted activities," Compl. ¶ 19, and impacts their ability to "participate in the certifying authority's pollution control efforts." *Id.* ¶ 291. But Plaintiffs again fail to identify any specific application of the Certification Rule that would make that alleged harm "certainly impending." In any event, an organization's redirection of resources for advocacy or litigation purposes in response to the action or inaction of another person is insufficient to confer standing. *See, e.g.*, *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11-12 (D.C. Cir. 2011) (citing multiple cases); *Ass'n for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Center Board of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994); *Puget Soundkeeper Alliance*, 2019 WL 6310562, at *7-8. After all, an organization does not have a "legally protected interest," *Spokeo*, 136 S. Ct. at 1548, in how to allocate its own resources. A "voluntary budgetary decision, however well-intentioned, does not constitute Article III injury, in no small part because holding otherwise would give carte blanche for any organization to 'manufacture standing by choosing to make expenditures' about its public policy of choice." *CASA de Md., Inc. v. Trump*, No. 19-2222, 2020 WL 4664820, at *9 (4th Cir. Aug. 5, 2020) (quoting *Clapper*, 568 U.S. at 402). "Resource

16

1    reallocations motivated by the dictates of preference," do not support standing where "no action

2    by the defendant has directly impaired the organization's ability to operate and to function." *Id.*;

3    *see also Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) (explaining that an organization's

4    decision to spend resources educating members or undertaking litigation are not cognizable

5    injuries); *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28

6    F.3d 1268, 1276 (D.C. Cir. 1994) ("Although a diversion of resources might harm the

7    organization by reducing the funds available for other purposes, 'it results not from any actions

8    taken by [the defendant], but rather from the [organization's] own budgetary choices.'")

9    (internal citation omitted).

10          The extent to which Plaintiffs might ultimately decide to focus or divert their advocacy

11   efforts is also entirely speculative. Plaintiffs do not identify any local or regional projects that

12   would be impacted by the Certification Rule. Plaintiffs also assert that they may engage in

13   advocacy regarding "water quality within the Delaware River watershed," Compl. ¶ 291, but

14   this broad allegation is not sufficiently tied to Plaintiffs' members' interests, specific waters, or

15   potential future harms. Ultimately, Plaintiffs' resource allocation for advocacy efforts is

16   speculative and insufficient to establish an injury in fact. Since Plaintiffs have not identified

17   specific waters that they claim will be affected (let alone any plans to discharge pollutants into

18   those waters), it is not even clear that the waters would require Plaintiffs' advocacy. Thus,

19   Plaintiffs have not alleged a concrete, imminent injury resulting from reallocation of resources.

20   **V.      CONCLUSION**

21          The Court should dismiss Plaintiffs' Complaint. The Court does not have jurisdiction to

22   entertain Plaintiffs' claims because Plaintiffs lack standing and the claims are not ripe for

23   review.

24   //

25   //

26   //

27   //

28   //

Respectfully submitted,

Date: September 14, 2020

ERIC GRANT
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division


*s/ Vanessa R. Waldref*
VANESSA R. WALDREF (D.C. Bar No. 989692)
Vanessa.R.Waldref@usdoj.gov
LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
Environmental Defense Section
Environment & Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Suite 4.149
Washington, D. C.  20002
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendants*

Of counsel:

James Curtin
Alexander Mullee
Office of General Counsel
U.S. Environmental Protection Agency

18

1

2

**CERTIFICATE OF SERVICE**

3

        I hereby certify that on this date, I caused a true and correct copy of the foregoing

4

Motion which has been electronically filed and is available for viewing and downloading from

5

the ECF system, to be served via ECF and/or first-class mail, postage prepaid, upon all parties

6

of record.

7

8

Date: September 14, 2020                              *s/ Vanessa R. Waldref*
                                                              Vanessa R. Waldref

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28