Kacy C. Manahan, Esquire
Delaware Riverkeeper Network
N.J. Attorney No. 275122018
Pa. Limited Licensee
*Admitted Pro Hac Vice*
925 Canal Street, Suite 3701
Bristol, PA 19007
215-369-1188 x115
kacy@delawareriverkeeper.org
*Attorney for Plaintiffs Delaware Riverkeeper Network*
*and the Delaware Riverkeeper, Maya van Rossum*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DELAWARE RIVERKEEPER** | ) | |
| **NETWORK, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-03412** |
| | ) | |
| **U.S. ENVIRONMENTAL** | ) | |
| **PROTECTION AGENCY, et al,** | ) | **Michael M. Baylson, J.** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................... 1

II.     STANDARD OF REVIEW .......................................................................................... 3

III.    LEGAL ARGUMENT ................................................................................................. 4

    A.      Plaintiff's Claims are Ripe for Review. ........................................................ 4

        1.      *Plaintiffs' Claims are Ripe under the Abbott Labs Test.* ............................... 5

        2.      *Plaintiffs' Claims are Ripe Under the Step-Saver Test.* ............................... 9

        3.      *Plaintiffs Need Not Wait for the Certification Rule to be Applied to a Particular Project Before Seeking Review in This Court.* ........................... 11

    B.      Plaintiffs Have Established Standing to Challenge the Certification Rule. ................... 14

        1.      *Plaintiff Delaware Riverkeeper Network Has Established Associational Standing on Behalf of its Members.* ................................... 16

        2.      *Plaintiff Delaware Riverkeeper Network has Established Standing as an Organization.* ................................... 20

        3.      *Plaintiff Maya van Rossum, the Delaware Riverkeeper, has Established Standing in Her Official Capacity as Delaware Riverkeeper.* ................................... 22

IV.     Conclusion .......................................................................................................... 23

i

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ............................................................... 5

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................... 10

*Comite' de Apoyo a los Trabajadores Agricolas v. Perez*, 148 F. Supp. 3d 361 (D.N.J. 2015) .. 25

*Comite' De Apoyo A Los Trabajadores Agricolas v. Perez*, 774 F.3d 173 (3d Cir. 2014) .. 6, 7, 10

*Constitution Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014)................................... 4

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020) ........................................................................................................................... 5

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000) ..... 22

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167 (2000)................................... 19

*Fund for Animals, Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13 (D.C. Cir. 2006) ...... 17

*Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83 (3d Cir. 1991) ................................. 25

*Hotel & Restaurant Emps. Union, Local 25 v. Attorney General*, 804 F.2d 1256 (D.C. Cir. 1986) ................................................................................................................................ 24

*Humane Soc. of the U.S. v. Hodel*, 840 F.2d 45 (D.C. Cir. 1988) ................................................. 24

*In re Horizon Healthcare Servs. Inc. Data Breach Litigation*, 846 F.3d 625 (3d Cir. 2017)......... 4

*In re Schering Plough Corp. Intron/Tremodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ........................................................................................................................... 4

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274 (1986) ....................................................................................................................... 21

*Kamal v. J. Crew Group. Inc.*, 918 F.3d 102 (3d Cir. 2019) ................................................... 11, 23

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................................ 4

*Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871 (1990) ........................................................... 12

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369 (3d Cir. 2015) ................................... 18

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272 (D.C. Cir. 2005) 7, 8, 9, 10

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ........................................... 5, 16

*Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998) ............................................................ 17

*P.U.D. No. 1 of Jefferson Cty. V. Wash. Dep't of Ecology*, 511 U.S. 700 (1994) ......................... 2

*Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278 (3d Cir. 2002) ........ 20, 24

*Plains All Am. Pipeline L.P.*, 866 F.3d 534 (3d Cir. 2017) .................................................. passim

*Reno v. Catholic Social Servs.*, 509 U.S. 43 (1993) ................................................................. 15

*Reno v. Flores*, 507 U.S. 292 (1993) ......................................................................................... 9

*Road-Con, Inc. v. City of Philadelphia*, 449 F. Supp. 3d 476 (E.D. Pa. 2020) ............................. 6

*S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370 (2006) ................................................. 2

*Shays v. Fed. Election Comm'n*, 414 F.3d 76 (D.C. Cir. 2005) .................................................. 26

*Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990) ...................... 13

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) .................................................... 22, 23

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...................................................... 18, 21

**Statutes**

33 U.S.C. § 1251(d) ................................................................................................................. 13

33 U.S.C. § 1341 ......................................................................................................................... 1

33 U.S.C. § 1341(a)(1) ............................................................................................................... 1

33 U.S.C. § 1341(d) .................................................................................................................... 1

33 U.S.C. § 1342 ......................................................................................................................... 1

5 U.S.C. § 704 ............................................................................................................................. 8

5 U.S.C. §§ 706(2)(A), (C) ........................................................................................................ 2

Contract Disputes Act of 1978, 5 U.S.C. § 553(b)(3)(A) ......................................................... 13

Federal Land Policy and Management Act, 43 U.S.C. §§ 1701–87 ........................................... 12

Immigrant Reform and Control Act of 1986 ("Reform Act"), Pub. L. 99–603, 100 Stat. 3359 .. 12

National Environmental Policy Act, 42 U.S.C. §§ 4321–4370h ................................................ 18

iii

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ....................................................................... 3

**Regulations**

Clean Water Act Section 401 Certification Rule ("Certification Rule"), 85 Fed. Reg. 42,210 (July 13, 2020) (to be codified at 40 C.F.R. Part 121).................................................... passim

**Constitutional Provisions**

U.S. Const., Art. III, § 2.............................................................................................. 14

## I.      **INTRODUCTION**

This Court should deny Defendants' motion to dismiss Plaintiffs' complaint because Plaintiffs' claims are ripe and Plaintiffs have standing to pursue them.

On July 13, 2020, Defendants promulgated the final Clean Water Act Section 401 Certification Rule ("Certification Rule" or "Rule"), 85 Fed. Reg. 42,210 (July 13, 2020) (to be codified at 40 C.F.R. Part 121). The Certification Rule is a procedural and substantive overhaul of the Clean Water Act's Section 401 program, which Congress enacted as an integral part of the Act's cooperative federalism scheme. 33 U.S.C. § 1341. The Section 401 program requires any applicant seeking a Federal license or permit to conduct any activity which may result in any discharge to the navigable waters to obtain a certification from a state or authorized tribe (collectively "certifying authority"),[1] that any such discharge will comply with the provisions of the Clean Water Act, including state water quality standards adopted pursuant to section 303 of the Act. *See* 33 U.S.C. § 1341(a)(1). Section 401 also allows a certifying authority to condition the certification on limitations necessary to assure compliance with the Act, and any other appropriate requirement of state law. *See* 33 U.S.C. § 1341(d).

The Supreme Court has analyzed the plain language of Section 401 and held that it allows certifying authorities to impose such conditions on the proposed activity generally, and that the conditions need not be limited to the activity's discharges. *See P.U.D. No. 1 of Jefferson Cty. V. Wash. Dep't of Ecology*, 511 U.S. 700, 711–12 (1994). In a later opinion, the Supreme Court contrasted Section 401 with Section 402[2] in holding that the potential discharge serving as the trigger for a Section 401 water quality certification need not be a discharge containing pollutants.

---

[1] In limited circumstances, Defendant U.S. Environmental Protection Agency will serve as the certifying authority.
[2] Section 402 is the Clean Water Act's National Pollutant Discharge Elimination System permitting program, which applies to the classic scenario of a pipe jutting out into a river and discharging pollutants. *See* 33 U.S.C. § 1342.

*See S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 375–80 (2006). Contrary to the plain text of the Clean Water Act and the Supreme Court's holdings, however, Defendants' Certification Rule impermissibly infringes on state and tribal authority to control pollution affecting waters within their borders.

Plaintiff Delaware Riverkeeper Network ("DRN") is a non-profit organization established in 1988 to protect and restore the Delaware River, its tributaries, and habitats. Plaintiff Maya van Rossum, the Delaware Riverkeeper, is a full-time privately-funded ombudsman who is responsible for the protection of the waterways in the Delaware River watershed. On July 13, 2020, Plaintiffs filed a complaint under sections 706(2)(A) and (C) of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(A), (C), seeking declaratory and injunctive relief based on the Certification Rule's many legal deficiencies. *See* Pls.' Compl., ECF No. 1.

Despite the fact that the Certification Rule has fundamentally altered the entire Section 401 program and applies to each and every water quality certification request as of September 11, 2020, *see* Certification Rule, 85 Fed. Reg. at 42,210, Defendants now move to dismiss Plaintiffs' complaint, arguing that Plaintiffs' claims will not ripen until a specific project has been subject to the Rule. Because such a project-specific dispute is not before this Court, Defendants reason, Plaintiffs must also lack standing.

This Court should reject Defendants' arguments and deny their motion to dismiss because Plaintiffs' claims are ripe for review under the Supreme Court's *Abbot Labs* test and the Third Circuit's *Step-Saver* test, and a project-specific review is not necessary to resolve Plaintiffs' facial challenge to the Certification Rule. Furthermore, Plaintiffs' have standing to mount this facial challenge, as the Certification Rule immediately creates a substantial risk that Federally licensed and permitted projects will degrade the resources of the Delaware River watershed thereby

harming Plaintiffs' interests; and because the Rule curtails Plaintiffs' ability to advocate for greater environmental protections in the Section 401 certification process, and to participate in the pollution control efforts of certifying authorities. Thus, DRN has both associational and organizational standing, and Maya van Rossum has standing in her official capacity as the Delaware Riverkeeper.

## II.   **<u>STANDARD OF REVIEW</u>**

Defendants move to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that Plaintiffs' claims are unripe and that Plaintiffs lack standing to pursue them. In reviewing a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court uses the same standard it would in deciding a Rule 12(b)(6) motion, and "consider[s] the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). Under this standard, the court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party," and if those facts "state a claim to relief that is plausible on its face," then the defendants' motion to dismiss must be denied. *In re Schering Plough Corp.*, 678 F.3d at 243 (first quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007), and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Specifically, for the purposes of establishing standing, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (second alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). "In the

context of a motion to dismiss . . . the [i]njury-in-fact element is not Mount Everest. The contours

of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only

that claimant allege[] some specific, identifiable trifle of injury." *In re Horizon Healthcare Servs.*

*Inc. Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir. 2017) (alterations in original) (quoting

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)).

## III.   LEGAL ARGUMENT

### A. Plaintiff's Claims are Ripe for Review.

For claims brought under the APA, there is a "basic presumption of judicial review [for]

one 'suffering legal wrong because of agency action.'" *Dep't of Homeland Sec. v. Regents of the*

*Univ. of Cal.*, 140 S. Ct. 1891, 1905, 207 L. Ed. 2d 353 (2020) (alteration in original) (quoting

*Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), *abrogated on other grounds by Califano v.*

*Sanders*, 430 U.S. 99, 105 (1977)). Courts, however, will avoid premature adjudication if a claim

is unripe. *See Abbott Labs.*, 387 U.S. at 148–49. "The ripeness doctrine is 'drawn from both Article

III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic*

*Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).

When a plaintiff's claims present a challenge to an administrative agency action,

"considerations of ripeness reflect the need 'to protect . . . agencies from judicial interference until

an administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties.'" *Comite' De Apoyo A Los Trabajadores Agricolas v. Perez*, 774 F.3d 173,

182–83 (3d Cir. 2014) (alteration in original)(quoting *Abbott Labs.*, 387 U.S. at 148–49). A court

will consider "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties

from withholding judicial consideration" when determining whether a claim is ripe. *Id.* at 183

(quoting *Abbott Labs.*, 387 U.S. at 148–49).

When, as here, plaintiffs seek "both declaratory and injunctive relief, the Third Circuit has instructed courts to evaluate ripeness using the following three factors: '(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment.'" *Road-Con, Inc. v. City of Philadelphia*, 449 F. Supp. 3d 476, 484 (E.D. Pa. 2020) (quoting *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 540 (3d Cir. 2017)). This is tripartite inquiry is known as the *Step-Saver*[3] test. The *Step-Saver* test "differs in form" from the Supreme Court's ripeness and standing tests, and "is merely a different framework for conducting the same justiciability inquiry." *Plains All Am. Pipeline L.P.*, 866 F.3d at 540 (first citing *Abbott Labs*, 387 U.S. 136, and then citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)). In addition, because the *Step-Saver* factors "are not exhaustive of the principles courts have considered in evaluating ripeness," *id.*, plaintiffs will address the ripeness doctrine under both the *Abbott Labs* and *Step-Saver* frameworks.

      1. *Plaintiffs' Claims are Ripe under the* Abbott Labs *Test.*

Plaintiffs' claims are ripe under the *Abbott Labs* test because the issues presented are purely legal and based entirely on the text of the Certification Rule, administrative record, and existing statutory and case law, thus they are fit for judicial review. Furthermore, Plaintiffs will suffer hardship absent review of the Certification Rule because the Rule is currently causing injury to Plaintiffs and that harm will continue unless and until this Court grants relief.

      a.  <u>Plaintiffs' Claims are Fit for Judicial Resolution.</u>

"When making a 'fitness for review' determination, a court considers whether the issues presented are purely legal, and the degree to which the challenged action is final." *Comite' De Apoyo*, 774 F.3d at 183. Fitness also depends on "whether the claims involve uncertain and

---

[3] *Step-Saver Data Sys., Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990).

contingent events that may not occur as anticipated or may not occur at all." *Id.* Where a challenged rule has been implemented, it is considered the agency's "final" position for the purposes of a ripeness determination. *Id.* In addition, where an agency "is using the challenged rule[] on an ongoing basis in the administration of [a] program," the "plaintiffs' harm is not contingent on some triggering event." *Id.* at 184. A challenge to a rule under the APA may "easily satisf[y] the first ripeness prong" where a plaintiff "allege[s] that the [agency] exceeded its statutory authority in drafting the [rule] and that the [agency] failed to offer a reasoned basis for [its] conditions and restrictions." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1281–82 (D.C. Cir. 2005). A "purely legal claim" alleging that an agency's action is arbitrary and capricious or contrary to law constitutes a facial challenge to that action, which is "presumptively reviewable." *Id.* at 1282.

Here, all of Plaintiffs' claims are based on the text of the Certification Rule, the administrative record, and existing statutory and case law. In order to resolve Plaintiffs' claims, this Court need not engage in hypothetical guesswork as to how the Rule may be applied to particular Federally licensed or permitted projects—Plaintiffs are challenging the rulemaking itself.

Specifically, plaintiffs challenge: Defendants' authority to promulgate the Rule, *see* Pls.' Compl., ECF No. 1, at ¶¶ 152–63; Defendants' failure to evaluate the Rule's impact on water quality, *id.* at ¶¶ 164–68; Defendants' failure to adequately justify a change in policy, *id.* at ¶¶ 169–81; the Defendants' unlawful interpretation of the scope of Section 401, *id.* at ¶¶ 182–223; Defendants' unreasonably restrictive interpretation of a "reasonable period of time," *id.* at ¶¶ 223–42; the Rule's elevation of Federal agency authority to second-guess the decisions of certifying authorities, *id.* at ¶¶ 243–59; the Rule's exclusion of certifying authorities from enforcement of

6

certification conditions, *id.* at ¶¶ 260–63; the Rule's use of discretionary language where the Clean Water Act uses mandatory language to describe the Administrator's duties, *id.* at ¶¶ 264–67; the Rule's mischaracterization of conditions imposed by neighboring jurisdictions on a Federal license or permit contrary to the statutory language, *id.* at ¶¶ 268–73; and the Rule's unconstitutional attempt to regulate state regulators, *id.* at ¶¶ 274–84.

None of these arguments, which form the basis of Plaintiffs' claims, require project-specific application in order to be evaluated by this Court. Plaintiffs have launched a facial challenge to the Certification Rule: to prevail in such a challenge, Plaintiffs "must establish that no set of circumstances exists under which the [regulation] would be valid." *Reno v. Flores*, 507 U.S. 292, 301 (1993) (alteration in original) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)). By definition, such a facial challenge cannot be proved in the context of one specific application of the Certification Rule.

Defendants argue, however, that "[i]n the absence of a live dispute over the application of the Certification Rule to a particular project or decision, Plaintiffs' challenge is not ripe." Defs.' Br. in Supp. of Mot. to Dismiss, ECF No. 16, at 5. The D.C. Circuit rejected a similar argument to a facial challenge of a regulation in *National Association of Home Builders*, where the United States Army Corps of Engineers argued that the appellants' APA challenge was "hopelessly abstract" until an actual permit application proposing a specific project was submitted, and that application was subject to a denial or unlawful condition. 417 F.3d at 1282. The court, however, saw "no reason" to "wait for a rule to be applied to see what its effect will be," as "[n]o further factual development [was] necessary to evaluate the appellants' challenge." *Id.* (quoting *Atl. States Legal Found. v. Envtl. Prot. Agency*, 325 F.3d 281, 284 (D.C. Cir. 2003)). In that case, as in the case before this Court, "[a]ll of the facts necessary for judicial review were before" defendants

when they issued the Certification Rule, "and, on APA review, [their] action necessarily stands or falls on that administrative record and [their] statutory . . . authority under the CWA." *Id.* So too here, the Certification Rule stands or falls on the administrative record and Defendants' authority under the Clean Water Act.

       b.   <u>Plaintiffs Will Suffer Hardship Absent Review of the Certification Rule.</u>

The second prong of the ripeness inquiry asks "whether the challenged action has a 'direct and immediate' impact on the parties." *Comite' De Apoyo*, 774 F.3d at 183 (quoting *Abbott Labs.*, 387 U.S. at 152). Defendants' Certification Rule is final and went into effect on September 11, 2020. *See* Certification Rule, 85 Fed. Reg. at 42,210. Plaintiffs seek review of the Certification Rule as a final agency action under section 704 of the APA. 5 U.S.C. § 704. A final agency action such as the Certification Rule marks the consummation of an agency's decisionmaking process and determines the rights and obligations of the parties or is an action from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 156 (1997) (first citing *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948), and then quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

The legal consequence of the Certification Rule is to immediately remove all nonpoint source water quality impacts from the scope of a certifying authority's water quality certification process and restrict the amount of time and information a certifying authority has to make a decision, thereby presenting a material risk of harm to Plaintiffs' concrete interests. *See Kamal v. J. Crew Group. Inc.*, 918 F.3d 102, 112–13 (3d Cir. 2019) ("'[A]n alleged procedural violation . . . manifest[s] concrete injury' if the violation actually harms or presents a material risk of harm to the underlying concrete interest." (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016))); *see also* Section III.B of this brief, *infra.* Plaintiffs have also been immediately deprived of the ability to advocate for greater environmental protections in the Section 401 certification

8

process, and to participate in the pollution control efforts of certifying authorities. *See* Section IV

of this brief, *infra*. These injuries will continue unabated until remedied by this Court, thus, without

judicial resolution of Plaintiffs' claims, these injuries will continue indefinitely, causing hardship

to Plaintiffs.

      *2.  Plaintiffs' Claims are Ripe Under the Step-Saver Test.*

      An evaluation of ripeness under the *Step-Saver* test reveals that (1) the parties' interests are

sufficiently adverse, (2) a judgment in this case will be conclusive as to the correct interpretation

of Section 401 of the Clean Water Act, and (3) a judgment in this case will have practical utility

by preserving the status quo for all participants in the administration of the Section 401 program.

      a.  <u>The Parties' Interests are Adverse Because Harm Will Result if the Declaratory</u>
                    <u>Judgment is Not Entered.</u>

      "Parties' interests are adverse where harm will result if the declaratory judgment is not

entered." *Plains All Am. Pipeline L.P.*, 866 F.3d at 541 (quoting *Travelers Ins. Co. v. Obusek*, 72

F.3d 1148, 1154 (3d Cir. 1995)). When the threatened action is government action, courts will not

require a plaintiff to expose itself to harm before bringing suit, thus, "'the party seeking review

need not have suffered a completed harm to establish adversity'—it suffices that there is a

'substantial threat of real harm and that the threat . . . remain real and immediate throughout the

course of the litigation.'" *Id.* (alteration in original) (first quoting *MedImmune, Inc. v. Genentench,*

*Inc.*, 549 U.S. 118, 128–29 (2007), and then quoting *Presbytery of N.J. of Orthodox Presbyterian*

*Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994)).

      Thus, Defendants' assertions that Plaintiffs must wait until a specific project actually harms

their interests are unfounded. Instead, the Certification Rule presents a substantial threat of real

harm and will continue to do so unless and until this Court grants Plaintiffs the declaratory and

injunctive relief they seek in their complaint. Accordingly, the parties' interests are sufficiently adverse.

> b.   The Courts' Judgment Will Be Conclusive as to the Meaning of Section 401 of the Clean Water Act.

The "conclusiveness" prong of the *Step-Saver* test "considers whether the contest is based on 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'" *Plains All Am. Pipeline L.P.*, 866 F.3d at 542–43 (quoting *Florio*, 40 F.3d at 1463). The court first asks whether "'the legal status of the parties' will 'be changed or clarified.' Second, . . . 'whether further factual development . . . would facilitate decision' or 'the question presented is predominantly legal.'" *Id.* at 543 (citations omitted) (first quoting *Travelers,* 72 F.3d at 1155, and then quoting *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d. Cir. 2001)).

As described above, declaratory and injunctive relief will change and clarify the legal status of the parties: if the Certification Rule is invalidated, the Section 401 program will revert back to the status quo that existed for nearly fifty years prior to September 11, 2020. In addition, as described in Section III.A.1.a of this brief, *supra*, Plaintiffs' challenge to the Certification Rule is based on the text of the Rule itself, the administrative record, and existing statutory and case law— no further factual development would facilitate this Court's decision. Thus, this Court's resolution of Plaintiffs' claims will be conclusive.

> c.   The Courts' Judgment Will Have Practical Utility for the Administration of the Section 401 Program.

"Practical utility goes to whether the parties' plans of actions are likely to be affected by a declaratory judgment . . . and considers the hardship to the parties of withholding judgment." *Plains All Am. Pipeline L.P.*, 866 F.3d at 543–44 (alteration in original) (quoting *NE Hub*, 239

F.3d at 344–45). A court also considers "whether entry of judgment 'would be useful to the parties and others who could be affected.'" *Id.* at 544 (quoting *Florio*, 40 F.3d at 1470). "One of the primary purposes behind the Declaratory Judgment Act was to enable plaintiffs to preserve the status quo before irreparable damage was done, and a case should not be considered justiciable unless 'the court is convinced that [by its action] a useful purpose will be served.'" *Step-Saver*, 912 F.2d at 649 (alteration in original) (citation omitted) (quoting E. Borchard, *Declaratory Judgments* 29, 58 (1941)).

In this case, entry of judgment in favor of Plaintiffs would be useful not only to Plaintiffs, but to all participants in the Section 401 water quality certification program. A judgment in favor of Plaintiffs would preserve the status quo under which Federally licensed or permitted projects had been evaluated for nearly fifty years prior to September 11, 2020, and would reduce the number of projects the unlawful Certification Rule will be applied to. Thus, the judgment would have practical utility, and would not be merely an abstract ruling on what is or is not permitted under the Clean Water Act.

3. *Plaintiffs Need Not Wait for the Certification Rule to be Applied to a Particular Project Before Seeking Review in This Court.*

In their motion to dismiss Plaintiffs' complaint, Defendants broadly claim that the "Supreme Court recognizes that agency regulations are ordinarily subject to judicial review only as a part of a challenge to a particular application of the regulation." Defs.' Br. in Supp. of Mot. to Dismiss at 6, ECF No. 16. Each of the cases cited by Defendants in support of this rule, however, featured agency action that was either non-final, or that required additional steps before the action had any legal effect. Here, the Certification Rule is a final agency action that has an immediate legal effect on every water quality certification request submitted after September 11, 2020.

11

In support of their argument, Defendants cite *Lujan v. National Wildlife Federation* ("*NWF*"), a case in which the Supreme Court reviewed a challenge to the Bureau of Land Management's ("BLM's") so-called "land withdrawal review program," which the Court described as "activities undertaken by the BLM to comply with . . . various provisions" of the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701–87. 497 U.S. 871, 875 (1990). The Court held that respondent could not "seek *wholesale* improvement of this program by court decree," and that it must "direct its attack against some particular 'agency action' that causes it harm." *Id.* at 891 (emphasis in original). The Court specifically noted that, in contrast, "a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately . . . is 'ripe' for review at once." *Id.* (first citing *Abbott Labs.*, 387 U.S. at 152–54, and then citing *Gardner v. Toilet Goods Ass'n, Inc.*, 387 U.S. 167, 171–73 (1967)).

The rule in *NWF* was next applied in *Reno v. Catholic Social Services, Inc.*, in which plaintiffs challenged policies and regulations promulgated by the Immigration and Naturalization Service ("INS") pursuant to the Immigrant Reform and Control Act of 1986 ("Reform Act"), Pub. L. 99–603, 100 Stat. 3359. 509 U.S. 43, 46–47 (1993). The plaintiffs were persons who believed they were eligible for legalization under the Reform Act, but who may be determined ineligible by application of the challenged INS policies and regulations. *Id.* at 46–52. The Court reasoned that plaintiffs' claims would not ripen until they first took the affirmative steps to apply for legalization, since the INS determines eligibility on a case-by-case basis based on several requirements of the Reform Act—in other words, plaintiffs could only bring suit once their application had been denied because of the INS's application of the challenged policies and regulations, as opposed to some other reason. *Id.* at 58–60. In this case, however, Plaintiffs need not take any additional affirmative steps before they are faced with the "immediate dilemma" posed by the Certification Rule—the

12

substantially increased risk of harm to Plaintiffs' interests, and the sudden reduction of Plaintiffs' ability to advocate for greater environmental protections in the Section 401 certification process, and to participate in the pollution control efforts of certifying authorities as applied to Federally licensed or permitted projects.

Defendants also seek to analogize this case to *National Park Hospitality Association v. Department of the Interior*, in which the Supreme Court found that the disputed "regulation" was actually just a "general statement of policy" that merely informed the public of the National Park Service's views on the appropriate application of a statute that it did not administer—the Contract Disputes Act of 1978, 5 U.S.C. § 553(b)(3)(A). 538 U.S. 803, 809 (2003). Thus, the Court found, the challenged policy had no "adverse effects of a strictly legal kind," which are required for a hardship showing. *Id.* (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

The scenario in *National Park Hospitality Association* is starkly different from the one presented here. Here, Defendants have promulgated a final rule governing the "substantive and procedural requirements for water quality certification under Clean Water Act . . . section 401." Certification Rule, 85 Fed. Reg. at 42,210. The Clean Water Act, furthermore, is a statute administered by Defendant Administrator Wheeler. *See* 33 U.S.C. § 1251(d).[4] As of September 11, 2020, the Certification Rule has altered the substantive and procedural requirements for water quality certification, thus creating "adverse effects of a strictly legal kind" such as the destruction of Plaintiffs' ability to challenge or enforce a 401 water quality certificate based on impacts to water quality caused by nonpoint sources.

Similarly, in *Ohio Forestry Association v. Sierra Club,* the court found a challenge to the Forest Service's forest plan for Ohio's Wayne National Forest to be non-justiciable because the

---

[4] Whether Defendant Administrator Wheeler had the authority to promulgate the Certification Rule is a separate question from whether he administers the Clean Water Act generally. *See* Pls.' Compl., ECF No. 1, at ¶ 308.

plan did not "command anyone to do anything or to refrain from doing anything," it did not "grant, withhold, or modify any formal legal license, power, or authority," it did not "subject anyone to any civil or criminal liability," and it "create[d] no legal rights or obligations." 523 U.S. at 733. Thus, the Court reasoned, the Sierra Club suffered no hardship as a result of the plan: "the Plan does not give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut." *Id.* Finally, despite Defendants' attempt to compare the instant matter to *Fund for Animals, Inc. v. U.S. Bureau of Land Management*, that case also involved broad policy statements without legal effect. 460 F.3d 13, 20 (D.C. Cir. 2006).

Here, not only does the Certification Rule effectively command and Federal agencies to amend their regulations governing water quality certifications,[5] and require certifying authorities to either abandon or rewrite inconsistent regulations,[6] it also extinguishes Plaintiffs' ability to object to the issuance of a certification for Federally licensed or permitted projects on the basis that the project will degrade water quality through any mechanism other than a point source discharge. In sum, just because a secondary action taken pursuant to the Certification Rule is likely to also cause Plaintiffs harm, that does not negate the immediate harm caused by the promulgation of the Certification Rule itself.

### B.  Plaintiffs Have Established Standing to Challenge the Certification Rule.

Federal courts' jurisdiction is limited—the U.S. Constitution defines the courts' jurisdiction as concerning "Cases" and "Controversies." U.S. Const., Art. III, § 2. To establish

---

[5] "Section 3.d. of [Executive Order 13868] provides that, within 90 days after the EPA issues its final section 401 regulations, 'if necessary, the heads of each 401 implementing Agency shall initiate a rulemaking to ensure that their respective agencies' regulations are consistent with' the EPA's final section 401 regulations and 'the policies set forth in section 2 of [the Executive Order].'" Certification Rule, 85 Fed. Reg. at 42,214 (second alteration in original) (quoting Exec. Order No. 13868, 84 Fed. Reg. 15,495 (Apr. 15, 2019)).

[6] "In addition to conforming changes that federal agencies may make to federal regulations that implement section 401, it is likely that States and Tribes will want to evaluate their existing certification statutes or regulations to ensure consistency with the EPA's final rule." Certification Rule, 85 Fed. Reg. at 42,214.

14

standing to sue under Article III, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *SBA List*, 573 U.S. at 157–58 (alteration in original) (quoting *Lujan*, 504 U.S. at 560–61). "[W]hen standing is challenged on the basis of the pleadings," a court must "accept as true all material allegation of the complaint and . . . construe the complaint in favor of the complaining party." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 (3d Cir. 2015) (alterations in original) (quoting *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)); *see also Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988).

Plaintiffs have identified two types of harm that they have suffered as a result of the Certification Rule: (1) a substantial increased risk that Federally licensed and permitted projects will degrade the resources of the Delaware River watershed thereby harming Plaintiffs' interests; and (2) the curtailment of Plaintiffs' ability to advocate for greater environmental protections in the Section 401 certification process, and to participate in the pollution control efforts of certifying authorities. *See* Pls.' Compl. ECF No. 1, at ¶¶ 13–19, 285–91.

Defendants assert that it is "not sufficient for Plaintiffs to recite that they are harmed because the Certification Rule *could* allegedly cause *other* federal agencies to apply the Rule to *future* certifications in an attenuated chain of events that *could* lead to environmental harm." Defs.' Br. in Supp. of Mot. to Dismiss, ECF No. 16, at 15 (emphasis in original). Defendants misunderstand Plaintiffs claims—Plaintiffs are harmed because the Certification Rule *currently* causes all applicants, states, and federal agencies to apply the Rule to *all* certifications which creates a substantial risk that harm to Plaintiffs' interests will occur. Furthermore, by focusing on the environmental harms rather than the harm to Plaintiffs, Defendants run afoul of the Supreme

Court's admonition in *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*: "The relevant showing for Article III standing is not injury to the environment but injury to the plaintiff. To insist on the former rather than the latter is to raise the standing hurdle higher than the necessary showing for success on the merits . . . ." 528 U.S. 167, 169 (2000).

Plaintiffs' injuries are not attenuated—the Certification Rule applies now. Plaintiffs need not wait until a formal legal or administrative application of the Certification Rule before its harms are felt—as of September 11, 2020, all requests for Section 401 water quality certification, and all decisions on those requests, must conform to the strictures of the Rule. The Certification Rule is not an abstract concept that may or may not apply to a particular water quality certification request, it is the entire framework within which certifications are now approved, waived, or denied. In sum, Plaintiffs are not asking this Court to hypothesize about the effects of the Certification Rule, rather, the effects of the Certification Rule are apparent from its text and Defendants' purposes in promulgating the Rule.

     1. *Plaintiff Delaware Riverkeeper Network Has Established Associational Standing on Behalf of its Members.*

Plaintiff Delaware Riverkeeper Network has associational standing because the Certification Rule is a deregulatory action that restricts the scope of the Clean Water Act's Section 401 program and diminishes the regulatory power of certifying authorities, thereby removing environmental safeguards in each and every 401 water quality certification decision, which routinely affect the concrete interests of DRN's members. Because members rely on the protections of Section 401 to advocate for enhanced water quality protections and to participate in certifying authorities' pollution control efforts, the removal of these protections also directly harms their ability to engage in this advocacy.

16

An association may pursue claims as a representative of its members where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (quoting *Hunt v. Wash. State Apple Avert. Comm'n*, 432 U.S. 333, 343 (1977)). "[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 275–76 (1986).

DRN has over 25,000 members, many of whom live, work, own properties and businesses, and recreate within the Delaware River watershed, and all of whom are concerned about the protection and restoration of the Delaware River, and its tributaries, habitats and resources. Pls.' Compl., ECF No. 1, at ¶¶ 13–14, 19, 288–90. Because the Certification Rule diminishes the previously broad scope of Section 401 and deprives states and tribes of their regulatory authority, this deregulatory action by Defendants creates a substantial risk that the Delaware River watershed will be subject to increased environmental harms from Federally licensed or permitted projects such as land cover change, deforestation, sedimentation and erosion, stream degradation, wetland loss, and air emissions that impact the Delaware River watershed's water quality. *Id.* at ¶ 287. These environmental impacts directly harm the recreational, aesthetic, health, and economic interests of DRN's members. *Id.* at ¶ 287–90.

When, as here, Plaintiffs seek redress to prevent imminent injury rather than remedy a past injury, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *SBA List*, 573 U.S. at 158

(internal quotations omitted) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). As the Fourth Circuit has recognized, "[t]hreatened environmental injury is by nature probabilistic." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000). This probability is measures as risk—and here, the risk is substantial due to the Certification Rule's deregulatory provisions. *See id.* at ¶¶ 19, 286, 287, 291.

Defendants argue that the Supreme Court's reasoning in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), can be directly applied to Plaintiffs' claims in this case. Defendants correctly describe *Summers* as a "suit brought by environmental organizations challenging [the] Forest Service's regulations that established general *procedural rules* for administrative review of *some* future projects (much like the Certification Rule)." Defs.' Br. in Supp. of Mot. to Dismiss, ECF No. 16, at 14 (emphasis added). In the instant matter, however, the Certification Rule is a "substantive and procedural" rule that applies to *all* future projects. Certification Rule, 85 Fed. Reg. at 42,210. Indeed, the Certification Rule "provides the EPA's first holistic analysis of the statutory text, legislative history, and relevant case law informing the implementation of the CWA section 401 program by the [EPA] and its federal, State, and Tribal partners." *Id.* at 42,215.

For these reasons, it is quite unlike the regulations at issue in *Summers*, which narrowly provided that notice and comment and administrative appeal procedures would not be applied to certain Forest Service projects that were categorically excluded from the requirements of the National Environmental Policy Act, 42 U.S.C. §§ 4321–4370h. *See Summers*, 555 U.S. at 490–91. The Court noted that "without further specification it is impossible to tell *which* projects are (in respondents' view) unlawfully subject to the regulations." Here, the Certification Rule is, in Defendants' own words, "relevant to *all* water quality certifications . . . ." Certification Rule, 85 Fed. Reg. at 42,212 (emphasis added).

18

In distinguishing *Summers*, the Third Circuit has held that "an alleged procedural violation" like Defendants' violations of the APA and Clean Water Act in this case, "'manifest[s] concrete injury' if the violation actually harms or presents a material risk of harm to the underlying concrete interest." *Kamal v. J. Crew Group. Inc.*, 918 F.3d at 112–13 (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016)). DRN members recreate in, own property in, and ingest the waters of the Delaware River watershed. *See* Pls.' Compl, ECF No. 1, at ¶¶ 13–19, 288–90. These underlying concrete interests have been subjected to a material risk of harm due to Defendants' promulgation of the Certification Rule, a deregulatory action that limits a certifying authority's ability to condition water quality certifications based on environmental harms not directly resulting from a point source discharge, limits the amount of information required for the certifying authority to make its decision, and places that decisionmaking authority on a tight timeframe. *See id.* at ¶¶ 19, 285–87. Thus, DRN's members have suffered a concrete injury caused by Defendants' promulgation of the Certification Rule. *See id.* at ¶¶ 19, 286, 287, 291. On behalf of its members, DRN seeks redress from this Court by requesting declaratory and injunctive relief vacating the Certification Rule and declaring its provisions unlawful.

The members' interests that DRN seeks to protect in this suit are germane to DRN's purpose. *See Pa. Psychiatric Soc.*, 280 F.3d at 283 (quoting *Hunt*, 432 U.S. at 343). The germaneness prong of the standing analysis requires a "mere pertinence between litigation subject and organizational purpose" and is "undemanding." *Humane Soc. of the U.S. v. Hodel*, 840 F.2d 45, 58 (D.C. Cir. 1988); *see also Hotel & Restaurant Emps. Union, Local 25 v. Attorney General*, 804 F.2d 1256, 1265 (D.C. Cir. 1986) (germaneness prong is "satisfied when the association's purposes are reasonably related to the challenge it seeks to bring"). DRN's mission is to protect and restore the Delaware River, and its tributaries, habitats and resources. Pls.' Compl., ECF No.

19

1, at ¶ 13. Thus, because DRN seeks in this lawsuit to protect its members interests in the waters of the Delaware River watershed, *id.* at ¶ 285, DRN seeks to protect interests that are germane to its purpose.

Finally, although Ms. van Rossum is an individual member of DRN who is participating in this lawsuit, "the nature of the claim and of the relief sought does not make the individual participation of *each injured party indispensable* to proper resolution of the cause . . . ." *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991) (emphasis in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Furthermore, "requests by an association for declaratory and injunctive relief do not require participation by individual association members." *Comite' de Apoyo a los Trabajadores Agricolas v. Perez*, 148 F. Supp. 3d 361, 371 (D.N.J. 2015) (quoting *Hosp. Council of W. Pa.*, 949 F.2d at 89).

Thus, because members of DRN, including Ms. van Rossum, *see* Section V.3 of this brief, *infra*, otherwise have standing to sue in their own right, because the interests DRN seeks to protect are germane to its purpose, and because neither the claim asserted nor the relief requested require the participation of individual members, DRN's complaint set forth valid claims for relief based on associational standing.

   2. *Plaintiff Delaware Riverkeeper Network has Established Standing as an Organization.*

DRN also has standing as an organization due to injuries sustained directly. As described in Plaintiffs' complaint, DRN's mission is to protect and restore the Delaware River, and its tributaries, habitats and resources. Pls.' Compl., ECF No. 1, at ¶ 13. In furtherance of these goals, DRN organizes and implements stream bank restorations, a volunteer monitoring program, educational programs, environmental advocacy initiatives, and recreational activities. *Id.* Thus, like its members, DRN has a direct interest in maintaining and improving water quality within the

Delaware River watershed in order to protect these educational and recreational activities. As described above, the Certification Rule's deregulatory provisions created a substantial risk of harm to these recreational, educational, and advocacy interests. *Id.* at ¶¶ 285–90. DRN seeks redress from this Court by requesting declaratory and injunctive relief vacating the Certification Rule and declaring its provisions unlawful. Accordingly, DRN's complaint has met its burden of establishing direct organizational standing to challenge the Certification Rule.

In addition, DRN has been immediately harmed by the Certification Rule because it reduces DRN's access to information and ability to advocate for enhanced water quality protections and to participate in certifying authorities' pollution control efforts. The D.C. Circuit has held that "when agencies adopt procedures inconsistent with statutory guarantees, parties who appear regularly before the agency suffer injury to a legally protected interest in 'fair decisionmaking.'" *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 85 (D.C. Cir. 2005) (quoting *Elec. Power Supply Ass'n v. FERC*, 391 F.3d 1255, 1262 (D.C. Cir. 2004)). The same logic can be applied to DRN's interest in the administration of the 401 program, in which it regularly participates in furtherance of its concrete interests in the Delaware River watershed.

DRN has been highly active in advocacy, administrative review, administrative appeal, and litigation regarding fracked gas infrastructure to ensure protection of water quality and the local environment when Federally licensed or permitted projects are proposed within the Delaware River watershed. Pls.' Compl., ECF No. 1, at ¶ 13. DRN staff and members will venture into the field to document violations and other problems along the path of pipeline construction and will bring these issues to the attention of the relevant government agencies. *Id.* DRN has an interest in the procedural and substantive integrity of the Section 401 program, because it provides the organization with a comprehensive understanding of how Federally licensed or permitted projects

21

will affect water quality within the Delaware River watershed, and allows DRN to meaningfully participate in the certification decisionmaking and enforcement processes. *Id.* at ¶ 291. Thus, DRN has articulated a cognizable interest in the lawful administration of the Clean Water Act's Section 401 program, which has been harmed by Defendants' unlawful interpretation of that provision contained in the Certification Rule. *See id.* at ¶¶ 19, 286, 287, 291. DRN seeks redress from this Court by requesting declaratory and injunctive relief vacating the Certification Rule and declaring its provisions unlawful. For these reasons, DRN's complaint has met its burden of establishing direct organizational standing to challenge the Certification Rule.

3. *Plainitff Maya van Rossum, the Delaware Riverkeeper, has Established Standing in Her Official Capacity as Delaware Riverkeeper.*

Plaintiff Maya van Rossum also has standing in this matter. Like many of DRN's members, Ms. van Rossum lives, works, and recreates within the Delaware River watershed. Pls.' Compl., ECF No. 1, at ¶¶ 16–17, 19, 288–90. However, Ms. van Rossum is also a full-time privately funded ombudsman responsible for the protection of the waterways in the Delaware River Watershed. *Id.* at ¶ 16. She advocates for the protection and restoration of the cultural, historical, ecological, recreational, commercial and aesthetic qualities of the watershed, and serves on a number of the region's water quality committees. *Id.* Ms. van Rossum regularly visits the Delaware River, its tributaries, habitats, and resources for both personal and professional reasons. *Id.* at ¶ 17, 19, 288–90. Ms. van Rossum's interests in her official capacity as Delaware Riverkeeper are subject to substantial risk due to the Certification Rule's deregulatory provisions. *Id.* at ¶¶ 285–90.

Ms. van Rossum also benefits from the Section 401 program's lawful administration, *see Shays*, 414 F.3d at 85, as it provides her with a comprehensive understanding of how Federally licensed or permitted projects will affect water quality within the Delaware River watershed, and allows her to participate in the pollution control efforts of certifying authorities. *Id.* at ¶ 291.

Thus, Ms. van Rossum's interests in her official capacity as the Delaware Riverkeeper have been subjected to a material risk of harm due to Defendants' promulgation of the Certification Rule, a deregulatory action that constricts the scope of the Section 401 program and unlawfully limits a certifying authority's ability to deny or condition water quality certifications. *See id.* at ¶¶ 19, 285–87. This injury to Ms. van Rossum's interests has been caused by Defendants' promulgation of the Certification Rule. *See id.* at ¶¶ 19, 286, 287, 291. To redress this injury, Ms. van Rossum seeks declaratory and injunctive relief vacating the Certification Rule and declaring its provisions unlawful. Thus, Ms. van Rossum's complaint has established standing to challenge Defendants' Certification Rule.

## IV.   **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

  /s/ Mark L. Freed
Mark L. Freed, Esq.
Pa. Atty. No. 63860
Curtin & Heefner LLP
2005 S. Easton Road, Suite 100
Doylestown, PA 18901
267-898-0570
mlf@curtinheefner.com

Kacy C. Manahan, Esq.
N.J. Attorney No. 275122018
Pa. Limited Licensee
*Admitted Pro Hac Vice*
Delaware Riverkeeper Network
325 Canal Street, Suite 3701
Bristol, PA 19007
215-369-1188 x115

23

*Attorneys for Plaintiffs Delaware Riverkeeper Network and the Delaware Riverkeeper, Maya van Rossum*