ERIC GRANT
Deputy Assistant Attorney General
VANESSA R. WALDREF (D.C. Bar No. 989692)
Vanessa.R.Waldref@usdoj.gov
LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
Environmental Defense Section
Environment & Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Suite 4.149
Washington, D.C.  20002
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK, and the DELAWARE RIVERKEEPER, MAYA VAN ROSSUM,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>ANDREW R. WHEELER, in his official capacity as the Administrator of the United States Environmental Protection Agency, et al.,<br><br>　　　　　　Defendants. | Case No. 2:20-cv-03412<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I.    PLAINTIFFS' CLAIMS ARE NOT RIPE ................................................................. 1

    A. This Case is Not Ripe for Review under the *Abbott Labs* Test ......................... 2

        1. Plaintiffs' Challenge is Not Fit for Review. ................................................. 2

        2. Plaintiffs Will Not Face any Hardship by Waiting for a Concrete Application of the Rule. ................................................................. 3

    B. This Case is Not Ripe for Review under the *Step Saver* Test ........................... 6

        1. Plaintiffs Fail to Demonstrate Adversity of Interests. ................................. 7

        2. Plaintiffs' Allegations Do Not Satisfy the Conclusiveness Requirement.. ............................................................................................... 7

        3. This Case Does Not Meet the Step-Saver Utility Test. ............................... 8

II.   PLAINTIFFS HAVE NOT ESTABLISHED STANDING ...................................... 9

    A. *Summers* Forecloses Plaintiffs' Standing in this Lawsuit. .................................. 9

    B. Plaintiffs' Alleged Procedural and Informational Injuries Do Not Support Standing. ................................................................................................ 11

III.  CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs v. Gardner*,
     387 U.S. 136 (1967) ........................................................................................................... 1

*Aetna Life Insurance Co. v. Haworth*,
     300 U.S. 227 (1937) ........................................................................................................... 7

*Armstrong World Industries, Inc. v. Adams*,
     961 F.2d 405 (3d Cir. 1992) ........................................................................................... 7, 8

*Atlanta Gas Light Co. v. United States Department of Energy*,
     666 F.2d 1359,
     *Cert. Denied,* 459 U.S. 836 (1982) ................................................................................... 8

*Atlantic States Legal Foundation Inc. v. EPA*,
     325 F.3d 281 (D.C. Cir. 2003) ........................................................................................... 3

*Beck v. McDonald,*
     848 F.3d 262 (4th Cir. 2017) ........................................................................................... 10

*Bennett v. Spear,*
     520 U.S. 154 (1997) ........................................................................................................... 4

*Blunt v. Lower Merion School District,*
     767 F.3d 247 (3d Cir. 2014) ............................................................................................. 13

*Buscemi v. Bell,*
     964 F.3d 252 (4th Cir. 2020) ........................................................................................... 10

*Califano v. Sanders,*
     430 U.S. 99 (1977) ............................................................................................................. 1

*Clapper v. Amnesty International USA*,
     568 U.S. 398 (2013) ......................................................................................................... 10

*Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*,
     141 F.3d 71 (3d Cir. 1998) ............................................................................................... 13

*Free Speech Coalition, Inc. v. Attorney General of United States*,
     825 F.3d 149 (3d Cir. 2016) ............................................................................................... 1

*Friends for Ferrell Parkway, LLC v. Stasko*,
     282 F.3d 315 (4th Cir. 2002) ........................................................................................... 11

*Hub Partners, L.P. v. CNG Transmission Corp.*,
    239 F.3d 333 (3d Cir. 2001) ............................................................................................... 6, 7, 9

*Kamal v. J. Crew Group. Inc.*,
    918 F.3d 102 (3d Cir. 2019) ................................................................................................... 5, 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................................................... 12

*Lujan v. National Wildlife Federation*,
    497 U.S. 871 (1990) ............................................................................................................... 2, 3, 4

*National Association of Home Builders v. United States Army Corps of Engineers*,
    417 F.3d 1272 (D.C. Cir. 2005) .................................................................................................. 4, 5

*National Parks Hospitality Ass'n v. Department of the Interior*,
    538 U.S. 803 (2003) ....................................................................................................................... 2, 3

*Northeast Hub Partners, L.P. v. CNG Transmission Corp.*,
    239 F.3d 333 (3d Cir. 2001) ............................................................................................... 6, 7, 9

*Office of Communication of the United Church of Christ v. FCC*,
    826 F.2d 101 (D.C. Cir. 1987) ...................................................................................................... 8

*Philadelphia Federation of Teachers, American Federation of Teachers,
Local 3, AFL-CIO v. Ridge*,
    150 F.3d 319 (3d Cir. 1998) ...................................................................................................... 4, 6

*Pittsburgh Mack Sales & Service, Inc. v. International Union of Operating Engineers,
Local Union No. 66*,
    580 F.3d 185 (3d Cir. 2009) ........................................................................................................ 7

*Plains All American Pipeline L.P. v. Cook*,
    866 F.3d 534 (3d Cir. 2017) ................................................................................................. 1, 2, 6

*Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*,
    40 F.3d 1454 (3d Cir. 1994) ................................................................................................ 7, 8, 10

*Public Citizen, Inc. v. National Highway Traffic Safety Admin.*,
    489 F.3d 1279 (D.C. Cir. 2007) ................................................................................................. 10

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) ........................................................................................................... 12

*Salvation Army v. Department of Community Affairs*,
    919 F.2d 183 (3d Cir. 1990) ................................................................................................ 7

*South Carolina v. United States*,
    912 F.3d 720 (4th Cir. 2019) ............................................................................................. 11

*State Farm Mutual Auto. Inurance. Co. v. Dole*,
    802 F.2d 474 (D.C. Cir. 1986) ............................................................................................ 4

*Step-Saver Data Systems, Inc. v. Wyse Technology*,
    912 F.2d 643 (3d Cir. 1990) ........................................................................................... 7, 8

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ........................................................................................... 4, 9, 10, 11

*Susan B. Anthony List*,
    573 U.S. 149 (2014) .................................................................................................... 2, 10

*Texas v. United States*,
    523 U.S. 296 (1998) ............................................................................................................ 4

*West Virginia Highlands Conservancy, Inc. v. Babbitt*,
    161 F.3d 797 (4th Cir. 1998) .............................................................................................. 3

*Free Speech Coalition, Inc. v. Attorney Gen. of United States*,
    825 F.3d 1495 (3d Cir. 2016) ............................................................................................. 1

*Wilderness Society, Inc. v. Rey*,
    622 F.3d 1251 (9th Cir. 2010) ........................................................................................... 11

**REGULATIONS**

40 C.F.R. p. 121 ......................................................................................................................... 4

40 C.F.R. § 121.2 ....................................................................................................................... 4

40 C.F.R. § 121.5 ....................................................................................................................... 4

40 C.F.R. § 121.6 ....................................................................................................................... 4

40 C.F.R. § 121.7 ....................................................................................................................... 4

40 C.F.R. § 121.10 ..................................................................................................................... 4

**INTRODUCTION**

Plaintiffs' facial challenge to the Certification Rule must be dismissed. The Certification Rule governs the certification process and the related conduct of (a) federal agencies that issue permits and licenses for activities that may result in a discharge to navigable waters, (b) the proponents of such projects, and (c) the States and Tribes that certify compliance with water quality requirements. The Certification Rule does not, however, govern Plaintiffs' conduct. In the absence of a concrete application of the Certification Rule to a specific project, Plaintiffs' challenge is barred by the independent, but conceptually reinforcing, doctrines of ripeness and standing. Despite lengthy briefing, Plaintiffs fail to identify a single specific, concrete, and imminent harm traceable to the Rule. Instead, they repeatedly ask that the Court join them in misinterpreting the plain language of the Rule and speculate that the Rule will be applied at some point in the future in a manner that will harm their interests. But this Court cannot proceed in the abstract, nor adjudicate future hypotheticals. Absent a specialized, pre-enforcement judicial review provision (which neither the Clean Water Act nor the Administrative Procedure Act provides here), Plaintiffs cannot make a facial challenge to the rule in the abstract. When, and if, the Certification Rule is applied to a decision that causes Plaintiffs harm, they may challenge that decision and those portions of the Certification Rule that caused the harm. For these reasons, and at this juncture, their case must be dismissed.

**ARGUMENT**

**I.   PLAINTIFFS' CLAIMS ARE NOT RIPE.**

"[W]hether Plaintiffs have standing or their claims are ripe . . . both turn on whether the threat of future harm . . . is sufficiently immediate to constitute a cognizable injury." *Free Speech Coalition, Inc. v. Attorney General of United States*, 825 F.3d 149, 167 n.15 (3d Cir. 2016). In *Abbott Labs. v. Gardner*, the Supreme Court laid out two principal considerations for determining ripeness: (1) "the fitness of the issues for judicial decision;" and (2) "the hardship to the parties of withholding court consideration," the so-called *Abbott Labs* test. *Plains All American Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (citing *Abbott Labs.*, 387 U.S. 136, 149 (1967) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

1  Similarly, in *Susan B. Anthony List v. Driehaus*, the Supreme Court emphasized that when
2  courts evaluate ripeness as a matter of standing in pre-enforcement challenges, they must
3  consider "whether the plaintiff has 'alleged a sufficiently imminent injury for the purposes of
4  Article III.' " *Plains All American Pipeline*, 866 F.3d at 539 (citing *Susan B. Anthony List*, 573
5  U.S. 149, 151 (2014)). Plaintiffs have not met those tests here.

**A.   This Case is Not Ripe for Review under the *Abbott Labs* Test.**

The "*Abbott Labs* test" has an additional gloss where—as here—the challenged agency action is a regulation. In that situation, courts must presume the challenge is not ripe until the regulation has been applied in a manner that harms plaintiff. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990) ("*NWF*"). The only exceptions to this presumption against pre-enforcement review of regulations are where there is a special review statute permitting the regulation "to be the object of judicial review directly" or where the regulation is a substantive rule that requires plaintiff to immediately adjust its primary conduct under threat of serious penalties. *Id*. Plaintiffs do not qualify for either of these exceptions.

*1.   Plaintiffs' Challenge is Not Fit for Review.*

First, neither the APA nor the CWA contains a specialized review procedure that would allow for a direct challenge to the Certification Rule. *See* EPA's Motion to Dismiss at 16-17, ECF No. 16 ("EPA's Mot."). Second, the Certification Rule guides the actions of federal licensing and permitting agencies, project proponents, and certifying authorities; it does not regulate the conduct of, or pose an immediate threat to, Plaintiffs or their members. *See id*. at 9-10.

In their opposition, Plaintiffs make various attempts to evade the *NWF* and *National Parks Hospitality Association v. Department of the Interior*, 538 U.S. 803, 812 (2003) ("*NPHA*"), presumption against pre-enforcement review by asserting that the Certification Rule is a "final agency action" and their claims are "purely legal." Pls.' Opp. at 8 (ECF No. 25-1). But a claim is not inherently ripe simply because it is "purely legal." Even where purely legal issues are presented, the presumption against pre-enforcement review applies. A court must still consider whether deferring judicial review would cause real hardship to the plaintiff and

whether further factual development would assist the court. For example, in *NPHA*, the Supreme Court held that although the plaintiff challenged a final agency action and presented a "purely legal" claim, the case was not ripe because deferring judicial review would not cause real hardship to the plaintiff, and the trial court would benefit from further factual development. 538 U.S. at 808. In *Atlantic States Legal Foundation Inc. v. EPA*, the D.C. Circuit emphasized that "even purely legal issues may be unfit for review." 325 F.3d 281, 284 (D.C. Cir. 2003). So too here. Even if Plaintiffs' allegations were all purely legal, here, as in *NWF* and *NPHA*, the Court would benefit from reviewing them in the context of a specific application where the "scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out." *NWF*, 497 U.S. at 891; *NPHA*, 538 U.S. at 812. In the meantime, Plaintiffs are not harmed by deferring judicial review.

Indeed, Plaintiffs' speculative, sweeping, and conclusory statements regarding the Rule's impact and how it might harm them in a hypothetical future request for certification, demonstrate how the Court would benefit from factual development. Specifically, Plaintiffs claim that the Rule's definition of "discharge" and its guidance to federal agencies on setting a "reasonable period of time" for certifying authorities to act will present a "material risk of harm" to Plaintiffs' interests in water quality protection. Pls.' Opp. at 8. Not only are these allegations insufficient because they are speculative and contingent on future events, but they are also devoid of any factual context that would allow the Court to test their veracity. Thus, further factual development would "significantly advance [the court's] ability to deal with the legal issues presented." *NPHA*, 538 U.S.at 812. Plaintiffs' claim is not fit for review.

    2. *Plaintiffs Will Not Face any Hardship by Waiting for a Concrete Application of the Rule.*

In the absence of a special review statute—which does not exist here—Plaintiffs' only route to pre-enforcement review is to claim that the Certification Rule is both a procedural rule and also "a substantive overhaul" forcing Plaintiffs to adjust their conduct immediately. *NWF*, 497 U.S. at 891; *see also West Virginia Highlands Conservancy, Inc. v. Babbitt*, 161 F.3d 797, 801 (4th Cir. 1998) (noting plaintiffs must demonstrate "immediate, direct, and significant"

hardship if review is withheld (quoting *State Farm Mutual Automobile Insurance Co. v. Dole*, 802 F.2d 474, 480 (D.C. Cir. 1986)). Plaintiffs fall well short of this obligation.

As we explained in our motion to dismiss, the Certification Rule does not directly apply to Plaintiffs and it "neither require[s] nor forbid[s] any action on the part of" Plaintiffs or their members. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) ("*Summers*"). *See* EPA's Mot. at 9-10, 13. Instead, the Certification Rule applies to federal agencies, establishing procedures for their actions in issuing permits or licenses for activities that may result in discharges to navigable waters, 40 C.F.R. §§ 121.2, 121.6, 121.10, and the Rule establishes procedures to guide project proponents in preparing certification requests, and to guide certifying authorities in responding to certification requests. *Id*. §§ 121.5, 121.7. It does not govern Plaintiffs' conduct. At most, the Certification Rule's requirements may affect Plaintiffs when they voluntarily participate in future requests for section 401 certifications from a state. Plaintiffs must therefore wait for "some concrete action applying the regulation to [their] situation in a fashion that harms or threatens to harm [them]." *NWF*, 497 U.S. at 891; *accord Texas v. United States*, 523 U.S. 296, 300 (1998); *Philadelphia Federation of Teachers, American Federation of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998) (courts must consider "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all").

Plaintiffs' heavy reliance on the D.C. Circuit's decision in *National Association of Home Builders v. United States Army Corps of Engineers*, 417 F.3d 1272, 1281 (D.C. Cir. 2005), is not availing. Both *NPHA* and *National Association of Homebuilders* were challenges that would be determined on the basis of the administrative record. Contrary to Plaintiffs' argument, that factor is not decisive. Pls.' Opp. at 6-7. Though neither the Supreme Court nor the D.C. Circuit specifies what aspects of the dispute are determinative in deciding whether the court would benefit from further factual development, in *National Association of Homebuilders*, the court did also consider whether the challenged rule was a final agency action as to the appellant trade association's member homebuilders. 417 F.3d at 1279-80. In analyzing the second prong of *Bennett v. Spear*, 520 U.S. 154 (1997), the court found that the rule did, as far as the appellants

were concerned, "create legal rights and impose binding obligations insofar as [the permits] authorize certain discharges of dredged and fill material into navigable waters without any detailed, project-specific review by the Corps' engineers in finding that the challenged rule was final agency action." 417 F.3d at 1279-80. The D.C. Circuit explained that the " 'direct and immediate' consequence of these authorizations for the appellants' 'day-to-day business' is not hard to understand: While some builders can discharge immediately, others cannot." *Id*. at 1280. The court's finding that some builders would be directly and immediately affected by the authorizations provides a basis for its determination that further factual development was unnecessary to resolve that dispute. Here, the Certification Rule does not in any way regulate Plaintiffs' conduct. Plaintiffs are not prohibited from any activity or required to undertake an activity as a result of the Certification Rule. Indeed, the vague and speculative nature of Plaintiffs' allegations of harm and the chain of future events that must occur to even create the possibility of harm distinguishes this matter from *National Association of Homebuilders*. If Plaintiffs are unable or unwilling to (in an effort to defend their standing) – plainly describe those future intervening events, then it is clear that the court would benefit from future factual development.

Plaintiffs inexplicably cite *Kamal v. J. Crew Group. Inc.*, 918 F.3d 102, 112-13 (3d Cir. 2019), in support of the notion that they will suffer hardship from a delay in judicial review. That case is neither on point nor supportive of Plaintiffs' argument. First, the issue in *Kamal* was standing, not ripeness. Second, *Kamal* addressed only the injury-in-fact inquiry in a situation where a procedural violation of a statute presented a material risk of the type of harm the statute sought to prevent. *Id*. *Kamal* did not create an alternative formulation of the Article III requirement for ripeness or injury-in-fact. As the Third Circuit explained in *Kamal*, under *Summers*, "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." 918 F.3d at 111.

Plaintiffs identify two allege types of harm that they argue present a risk to their interests. But neither is sufficient to satisfy the second prong of the *Abbott Labs* test (or to

5

qualify as an injury-in-fact, as we explain below). First, Plaintiffs allege that the Certification Rule will "immediately remove all nonpoint source water quality impacts from the scope of a certifying authority's water quality certification process." Pls.' Opp. at 8; *see id*. at 15. Second, Plaintiffs allege that the Certification Rule will "restrict the amount of time and information a certifying authority has to make a decision." *Id*. at 8; *see id*. at 15. The first allegation is both speculative and lacking concreteness, because it relies on the mere possibility that a hypothetical future project will involve nonpoint source discharges that are excluded from a state's water quality certification and that exclusion will harm Plaintiffs' interests. Plaintiffs' second allegation, in addition to being similarly hypothetical and speculative, is inapposite because it addresses an alleged harm to certifying authorities, not Plaintiffs. To the extent the reasonable period of time provided by a federal agency for certifying authorities' action on a future certification request might indirectly affect Plaintiffs, that potential impact is wholly contingent upon future events. Plaintiffs have simply failed to demonstrate any semblance of immediate harm or hardship from delaying judicial review until Plaintiffs' claims are concrete and not abstract.

### B. This Case is Not Ripe for Review under the *Step Saver* Test.

Although the Third Circuit's *Step-Saver* test differs in form from the ripeness test articulated in *Abbott Labs*, it is merely a different framework for conducting the same justiciability inquiry. *Plains All American Pipeline*, 866 F.3d at 540. Thus, while courts in the Third Circuit consider related claims for declaratory and injunctive relief under the *Step-Saver* framework, *see*, *e.g.*, *Northeast Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 339-49 (3d Cir. 2001), *Step-Saver* "simply alters the headings under which various factors are grouped," *Philadelphia Federation of Teachers v. Ridge*, 150 F.3d 319, 323 n.4 (3d Cir. 1998). In applying *Step-Saver*, the "hardship" and "fitness" factors of the *Abbott Labs* test still guide the courts' analysis. *Plains All American Pipeline*, 866 F.3d at 540.[1] "The *Step–Saver* rubric is a

---

[1] Plaintiffs concede that the *Step-Saver* test "differs in form" from the Supreme Court's ripeness and standing tests, and "is merely a different framework for conducting the same justiciability inquiry." Pls.' Opp. at 5.

6

distillation of the factors most relevant to the *Abbott Labs* considerations. Adversity and conclusiveness apparently are subsumed under the 'fitness' prong of the *Abbott Labs* test, while utility is relevant both to 'fitness' and 'hardship.'" *Northeast Hub Partners,* 239 F.3d at 342 n.9 (internal citations omitted). Thus, this case is not ripe for review under either *Abbott Labs* or the *Step-Saver* test.

### 1. Plaintiffs Fail to Demonstrate Adversity of Interests.

"For there to be an actual controversy the defendant must be so situated that the parties have adverse legal interests." *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 648 (3d Cir. 1990) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757, at 582-83 (2d ed. 1983)). However, although "the party seeking review need not have suffered a 'completed harm' to establish adversity of interest, it is necessary that there be a substantial threat of real harm and that the threat 'must remain real and immediate' throughout the course of the litigation." *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (quoting *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir.1992), and *Salvation Army v. Department of Community Affairs*, 919 F.2d 183, 192 (3d Cir.1990)). A "potential harm that is 'contingent' on a future event occurring will likely not satisfy this prong of the ripeness test." *Pittsburgh Mack Sales & Service*, 580 F.3d at 190 (citing *Step-Saver*, 912 F.2d at 647-48; *Armstrong*, 961 F.2d at 413). *Step-Saver* does not do away with the requirement that the alleged harm be concrete and not contingent on a string of future events that might not even occur or occur in a way that harms Plaintiffs. As described above with regard to the analogous "fitness for review" prong of the *Abbott Labs* test, the harms alleged by Plaintiffs are insufficient to overcome the bar on pre-enforcement review.

### 2. Plaintiffs' Allegations Do Not Satisfy the Conclusiveness Requirement.

Under *Step-Saver*, any "contest must be based on a 'real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Step-Saver*, 912 F.2d at 649 (quoting *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 241 (1937)). Though

the Third Circuit has held that "predominantly legal questions are generally amenable to a conclusive determination in a preenforcement context," *Presbytery of New Jersey of the Orthodox Presbyterian Church*, 40 F.3d at 1468, "plaintiffs raising predominantly legal claims must still meet the minimum requirements for Article III jurisdiction," *Armstrong*, 961 F.2d at 421 (citing *Office of Communication of United Church of Christ v. FCC*, 826 F.2d 101, 105 (D.C. Cir. 1987) (The "presence of 'a purely legal question' is not enough, of itself, to render a case ripe for judicial review, not even as to that issue.")); *Presbytery of New Jersey of the Orthodox Presbyterian Church*, 40 F.3d at 1468.

As explained above, Plaintiffs' allegations of harm are entirely hypothetical and based on a chain of similarly hypothetical future events. *Step-Saver* does not loosen the Article III requirement for Plaintiffs to demonstrate a harm that is concrete and immediate. Plaintiffs will be in no different position with regard to the Certification Rule today than they will be in future when they identify an actual project for which their allegations of harm could take shape and might present a justiciable challenge. Indeed, the Third Circuit's holding in *Armstrong* approved of the Eleventh Circuit's rationale in *Atlanta Gas Light Co. v. United States Department of Energy*, 666 F.2d 1359 (11th Cir. 1982), which also considered, *inter alia*, whether the parties' claims would change in future litigation and "that the parties would be subject to enforcement of the challenged act were it implemented." *Florio*, 40 F.3d at 1468. Here, Plaintiffs cannot conceivably experience any cognizable harm – or even a material risk of harm – unless and until their speculation about how federal agencies or certifying authorities conform their actions to the Certification Rule comes to fruition. Thus, Plaintiffs cannot demonstrate either conclusiveness under *Step-Saver* or fitness for review and hardship under *Abbott Labs*.

### 3. *This Case Does Not Meet the Step-Saver Utility Test.*

"One of the primary purposes behind the Declaratory Judgment Act was to enable plaintiffs to preserve the status quo . . . , and a case should not be considered justiciable unless 'the court is convinced that [by its action] a useful purpose will be served.'" *Step-Saver*, 912 F.2d at 649 (quoting E. Borchard, Declaratory Judgments 29, 58 (1941)). This evaluation overlaps with both aspects of the *Abbott Labs* test, evaluating both hardship to the parties of

withholding decision and whether the claim involves uncertain and contingent events. *Northeast Hub Partners*, 239 F.3d at 342 n.9. Here, there is no utility to resolving Plaintiffs' claims in the abstract now because they will be in no different place as it regards the Certification Rule if they wait to challenge it in connection with a specific project. Unless and until there is such a project and Plaintiffs can demonstrate some concrete, non-speculative harm that does not rely on intervening future events to occur, Plaintiffs will suffer no hardship.

## II.     PLAINTIFFS HAVE NOT ESTABLISHED STANDING.

### A.     *Summers* Forecloses Plaintiffs' Standing in this Lawsuit.

As Plaintiffs have failed to demonstrate immediate harm or hardship under the ripeness analysis, Plaintiffs have also failed to establish the concrete, imminent injury-in-fact required for Article III standing. Plaintiffs contend that they can establish injury-in-fact without identifying any potential application of the Certification Rule because that Rule applies to "*all* certifications" and "creates a substantial risk that harm to Plaintiff's interests will occur." Pls.' Opp. at 15. Not so. The speculative harms alleged by Plaintiffs in this facial challenge do not meet the standing threshold established in *Summers v. Earth Island Institute*. To recap: in *Summers*, the respondents sought to prevent the Forest Service from enforcing regulations that exempted certain smaller projects from the notice, comment, and appeal process used by the Forest Service for more significant projects. 555 U.S. at 490. These smaller projects became exempt from that process because the Forest Service had adopted a rule categorically excluding those projects from review. *Id.* at 490-91. By the time the case came before the Supreme Court only a facial challenge to the regulations remained. *Id.* at 491-92. As in *Summers*, the issue here is "whether [Plaintiffs] have standing to challenge the regulations in the absence of a live dispute over a concrete application of those regulations." *Id.* at 490.

The answer, of course, is "no." The Supreme Court could not have been clearer: plaintiffs do not have standing to challenge a "regulation in the abstract" without "any concrete application that threatens imminent harm" to their interests. "Such a holding would fly in the face of Article III's injury in fact requirement." *Id.* at 494. Accordingly, pursuant to the plain holding of *Summers*, this facial challenge to the Certification Rule in the abstract must be

9

dismissed for lack of Article III standing because it is not connected to "any concrete application that threatens imminent harm to [Plaintiffs'] interests." *Id.*

Moreover, *Summers* did not hold that plaintiffs who bring a facial challenge to a regulation may establish standing merely by identifying pending or future agency actions that *may* be subject to that regulation and that *might*, depending on the final agency decision, harm them. Rather, a plaintiff must demonstrate that a particular project "*will* impede" his or her "specific and concrete" interests by showing that a project is "about to" happen "*in a way that harms*" the plaintiff's interests, which Plaintiffs have failed to do here. 555 U.S. at 495-96 (emphasis added); *cf. Beck v. McDonald*, 848 F.3d 262, 276 (4th Cir. 2017) ("[A] threatened event can be 'reasonabl[y] likel[y]' to occur but still be insufficiently 'imminent' to constitute an injury-in-fact." (quoting *Clapper v. Amnesty International USA*, 568 U.S. 398, 410 (2013)).

Plaintiffs contend that Defendants "misunderstand" Plaintiffs' injuries – that they are currently harmed by the Certification Rule because it applies to "*all* certifications which creates a substantial risk that harm to Plaintiffs' interests will occur." Pls.' Resp. 15. Plaintiffs quote *Susan B. Anthony List*, 573 U.S. at 158, for the proposition that this "substantial risk" of a future injury can establish standing. In fact, *Clapper*, the case that the Supreme Court in *Susan B. Anthony List* cites for the relevant standard, plainly provides that a "threatened injury must be 'certainly impending.'" 568 U.S. at 401; *Buscemi v. Bell*, 964 F.3d 252, 259 (4th Cir. 2020). There is no impending injury here. But even if a naked "substantial risk" standard applied, Plaintiffs' "attenuated chain of inferences necessary to find harm" would fail to meet it. *Clapper*, 568 U.S. at 414 & n.5 (addressing lack of clarity in Supreme Court case law as to "certainly impending" versus "substantial risk" standards for injury-in-fact). An "increased risk" of harm is not itself a concrete, particularized, and actual injury. Otherwise, "possible future injuries, whether or not they are imminent, would magically become concrete, particularized, and actual injuries merely because they could occur." *Public Citizen, Inc. v. National Highway Traffic Safety Administration*, 489 F.3d 1279, 1298 (D.C. Cir. 2007). Rather, the "ultimate alleged harm,"—i.e., pollutants degrading water quality—must be concrete, particularized, and imminent. *Id.*; *see Presbytery of New Jersey of the Orthodox Presbyterian Church*, 40 F.3d at

10

1462 ("It is sometimes argued that standing is about *who* can sue while ripeness is about *when* they can sue, though it is of course true that if no injury has occurred, the plaintiff can be told either that *she* cannot sue, or that she cannot sue *yet*."). Because Plaintiffs have failed to establish such a harm here, the Court should dismiss this case.

### B. Plaintiffs' Alleged Procedural and Informational Injuries Do Not Support Standing.

Plaintiffs' claims of so-called procedural injuries fail because they are not connected to a concrete application of the Certification Rule. As *Summers* made clear, an injury to a purely procedural right is not, by itself, an injury-in-fact sufficient to support standing. 555 U.S. at 496. Rather, that procedural right must protect a specific concrete interest that is threatened with imminent harm. *Id.*; *see also Wilderness Society, Inc. v. Rey*, 622 F.3d 1251, 1260 (9th Cir. 2010) (Under *Summers*, a "concrete and particular project must be connected to the procedural loss."). Plaintiffs attempt to turn their alleged procedural injuries into injuries-in-fact by tying them to vague and undefined allegations of future injury to waters that Plaintiffs' members "recreate in, own property in, and ingest." Pls.' Opp. at 19. But until an agency applies the Certification Rule to a future project *and* does so in a way that harms the specific interests of Plaintiffs or their members, these allegations are precisely the type of speculative, hypothetical harms that are insufficient to support standing.

If a future project is authorized under the Certification Rule and causes an injury to Plaintiffs, they will be free to challenge the final agency action at issue. But Plaintiffs' speculative concerns about what an agency *might do* in the future are insufficient to support standing. *See South Carolina v. United States*, 912 F.3d 720, 728-29 (4th Cir. 2019) (rejecting standing based upon "chain of possibilities" that assume the government will "breach or abandon their existing commitments"); *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 322 (4th Cir. 2002) ("The injury-in-fact prong of the standing inquiry cannot be met by citizens hypothesizing about the speculative effects of" an agency action or lack thereof).

Plaintiffs' remaining arguments in support of standing based on their procedural harms are red herrings. They distract from the fact that not a single Plaintiff or a single member of

1  Plaintiff's organization can identify a concrete, particularized, and imminent harm. Plaintiffs
2  recognize that they are not the "object" of the Certification Rule. Pls.' Opp. at 19. Indeed,
3  Plaintiffs explain that their allegations relate to how certifying authorities may be impacted by
4  the Certification Rule regarding the scope, procedure, and timing of a certification application,
5  then attempt to turn this into their own "concrete injury." *Id.* Plaintiffs are correct that the
6  Certification Rule does not directly regulate them or their advocacy efforts. Therefore, standing
7  is "substantially more difficult" to establish, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562
8  (1992), and Plaintiffs' attempt to do so fails.

9        Like the rest of their allegations, Plaintiffs' theories about informational harm are based
10 on conjecture about future applications of the Certification Rule and should be denied on that
11 basis. Plaintiffs' alleged loss of information has not yet occurred, if it ever will. And it cannot
12 occur until a project proponent and certifying authority provide what Plaintiffs allege to be
13 insufficient information in a future application process. Even then, the final decision of the
14 federal permitting agency may not injure Plaintiffs. A plaintiff cannot rely on "speculative,
15 future actions of an unknown third-party" as part of an attenuated chain of possibilities leading
16 to the alleged harm. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 43 (3d Cir. 2011) ("The present test
17 is actuality, not hypothetical speculations concerning the possibility of future injury.")

18       Here, Plaintiffs claim that certifying authorities will deprive them of information by
19 simply following the Certification Rule. Pls.' Opp. at 21. But embedded in this assertion are all
20 of Plaintiffs' speculative assumptions about what information project proponents seeking
21 permits or licenses will provide and how certifying authorities will apply the Rule in future site-
22 specific reviews. If the hypothetical nature of their alleged informational deprivations were not
23 enough, Plaintiffs have also failed to establish any cognizable harm flowing from those alleged
24 deprivations. Plaintiffs allege harm because the Certification Rule "creates a substantial risk that
25 Federally licensed and permitted projects will degrade the resources of the Delaware River
26 watershed" and "because the Rule curtails Plaintiffs ability to advocate for greater
27 environmental protections in the Section 401 certification process, and to participate in the
28 pollution control efforts of certifying authorities." Pls.' Opp. at 2-3. But those alleged harms fall

short because the Third Circuit has consistently held that an organization cannot base standing on injuries to advocacy interests or "manufacture standing" by choosing to make expenditures about its policy of choice. *See Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 79 (3d Cir. 1998); *Blunt v. Lower Merion School District*, 767 F.3d 247, 285 (3d Cir. 2014).

Nothing in the Certification Rule prevents Plaintiffs from advocating for environmental interests. Plaintiffs' voluntary budgetary and advocacy choices to divert resources to counteract alleged impacts of the Certification Rule are not an injury-in-fact. *See Fair Housing,* 141 F.3d at 79; *Blunt,* 767 F.3d at 285. Absent a concrete, imminent injury-in-fact, Plaintiffs lack standing to challenge the Certification Rule.

### III.   CONCLUSION

For the foregoing reasons and those in EPA's motion to dismiss, the Court should dismiss Plaintiffs' Complaint. The Court lacks jurisdiction because Plaintiffs' claims are not ripe for review and Plaintiffs have failed to demonstrate standing.

//

//

Respectfully submitted,

ERIC GRANT
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*s/ Vanessa R. Waldref*
VANESSA R. WALDREF (D.C. Bar No. 989692)
Vanessa.R.Waldref@usdoj.gov
LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
Environmental Defense Section
Environment & Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Suite 4.149
Washington, D. C.  20002
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendants*

Of counsel:

James Curtin
Alexander Mullee
Office of General Counsel
U.S. Environmental Protection Agency

14

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a true and correct copy of the foregoing Motion which has been electronically filed and is available for viewing and downloading from the ECF system, to be served via ECF and/or first-class mail, postage prepaid, upon all parties of record.

Date: October 5, 2020                    *s/ Vanessa R. Waldref*
                                         Vanessa R. Waldref