# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

---

DELAWARE RIVERKEEPER NETWORK, *and* the DELAWARE RIVERKEEPER, MAYA VAN ROSSUM,

      Plaintiffs,

  v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *and* ANDREW R. WHEELER, *in his official capacity as Administrator of the United States Environmental Protection Agency*,

      Defendants,

No. 2:20-cv-03412-MMB

---

## NATIONAL HYDROPOWER ASSOCIATION'S MOTION TO INTERVENE

National Hydropower Association ("NHA") hereby moves pursuant to Fed. R. Civ. P. 24(a)(2) to intervene as a defendant in the above-captioned action to defend against the challenge to the U.S. Environmental Protection Agency's July 13, 2020 final rule entitled "Clean Water Act Section 401 Certification Rule," 85 Fed. Reg. 42,210 (July 13, 2020), brought by Plaintiffs in this action.

As demonstrated in the accompanying memorandum, NHA seeks to intervene as of right because it "claims an interest relating to the property or transaction that is the subject of the action" and the "disposi[tion] of the action may as a practical matter impair or impede [NHA's] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). In addition, the current Defendants do not adequately represent NHA's

interests.  Alternatively, NHA seeks to intervene permissively because it "has a claim . . . that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  NHA's intervention will not unduly delay or prejudice the adjudication of any party's rights in this matter as the litigation is still in its early stages.  As more fully set forth in the accompanying memorandum, this motion is based on the grounds that (1) the motion is timely; (2) NHA has significant protectable interests, both for itself and for its members who presently operate hydropower facilities subject to the rule and as advocates for the challenged rule; (3) the disposition of this action without NHA's involvement could impede NHA's and its members' ability to protect these interests; (4) the current parties do not adequately represent the specific interests of NHA; and (5) NHA's position in support of the revised regulations plainly involves common questions of law and fact with this action, and NHA's direct opposition to Plaintiffs' claims satisfies the "common question" requirement for permissive intervention.

Counsel for NHA attempted to meet and confer with counsel for the parties in this matter, in advance of this filing, in an effort to negotiate a stipulation for intervention.  Plaintiffs and Defendants have not yet responded to NHA's inquiry.

This Motion is made upon this Motion, the accompanying Memorandum in Support, the Declaration of Dennis Cakert, the pleadings and papers already on file, and any oral argument as may be made at the hearing.

NHA respectfully requests that this Court grant its Motion, and enter the proposed order attached to this filing.

Dated, October 15, 2020

Respectfully submitted,

/s/ *John L. Schweder II*

CHARLES SENSIBA
*Pro hac vice forthcoming
TROUTMAN PEPPER HAMILTON
SANDERS LLP
401 9th Street N.W., Suite 1000
Washington, D.C. 20004
(202) 274-2850
(202) 274-2994 (fax)
charles.sensiba@troutman.com

ANDREA W. WORTZEL
*Pro hac vice forthcoming
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1406
(804) 697-1339 (fax)
andrea.wortzel@troutman.com

JOHN L. SCHWEDER II
PA Attorney I.D. 208595
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4170
(215) 981-4750
john.schweder@troutman.com

MISHA TSEYTLIN
*Pro hac vice forthcoming
SEAN T.H. DUTTON
*Pro hac vice forthcoming
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
sean.dutton@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of October, 2020, a true and accurate copy

of the foregoing was served via the Court's CM/ECF system upon all counsel of record.

/s/ *John L. Schweder II*

JOHN L. SCHWEDER II
PA Attorney I.D. 208595
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4170
(215) 981-4750
john.schweder@troutman.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

---

DELAWARE RIVERKEEPER NETWORK, *and* the
DELAWARE RIVERKEEPER, MAYA VAN
ROSSUM,

      Plaintiffs,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *and* ANDREW R.
WHEELER, *in his official capacity as Administrator of the United States Environmental Protection Agency*,

      Defendants,

No. 2:20-cv-03412-MMB

---

## NATIONAL HYDROPOWER ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

---

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

STATEMENT OF INTERESTS ................................................................................. 2

ARGUMENT ................................................................................................................. 4

   I.   NHA May Intervene As Of Right ................................................................ 4

      A.  This Motion To Intervene Is Timely ............................................... 5

      B.  NHA Has A Direct And Significant Interest In The Continued Enforcement Of Defendants' Final Rule ....................................... 6

      C.  NHA's Ability To Protect Its Interests, As A Practical Matter, May Be Impaired Or Impeded By The Disposition Of This Action ..................... 8

      D.  The Existing Parties Do Not Adequately Represent NHA's Interests ........ 9

   II.  Alternatively, This Court Should Grant NHA Permissive Intervention ........ 12

  III.  NHA Should Be Permitted To File Its Answer After The Named Defendants ............................................................................................. 13

   CONCLUSION ...................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997) ................................................................. 5

*Brody by & through Sugzdinis v. Spang,*
   957 F.2d 1108 (3d Cir. 1992) ............................................. 6, 8, 9, 10

*Fresno Cty. v. Andrus,*
   622 F.2d 436 (9th Cir. 1980) ................................................. 6, 8

*Fund for Animals, Inc. v. Norton,*
   322 F.3d 728 (D.C. Cir. 2003) ............................................ 10, 11

*Hoopa Valley Tribe v. FERC,*
   913 F.3d 1099 (D.C. Cir. 2019) ................................................ 7

*Kleissler v. U.S. Forest Serv.,*
   157 F.3d 964 (3d Cir. 1998) ........................................ 4, 6, 10, 11

*Marshall v. Meadows,*
   921 F. Supp. 1490 (E.D. Va. 1996) ......................................... 13

*Mil. Toxics Project v. EPA,*
   146 F.3d 948 (D.C. Cir. 1998) .............................................. 8

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,*
   72 F.3d 361 (3d Cir. 1995) ............................................... 6, 7, 8

*Pennsylvania v. President of the U.S. of Am.,*
   888 F.3d 52 (3d Cir. 2018) ............................................. *passim*

*Philadelphia Recycling & Transfer Station, Inc. v. City of Philadelphia,*
   Civ. A. No. 95-4597, 1995 WL 517644 (E.D. Pa. Aug. 29, 1995) .............. 13, 14

*Spring Constr. Co. v. Harris,*
   614 F.2d 374 (4th Cir. 1980) ............................................... 13

*Trbovich v. United Mine Workers of Am.,*
   404 U.S. 528 (1972) ..................................................... 10, 12

*United States v. Alcan Aluminum, Inc.,*
   25 F.3d 1174 (3d Cir. 1994) ................................................. 5

*Wallach v. Eaton Corp.,*
   837 F.3d 356 (3d Cir. 2016) .............................................. 5, 12

*Wayne Land & Mineral Grp., LLC v. Del. River Basin Comm'n,*
   959 F.3d 569 (3d Cir. 2020) ................................................. 5

*WJA Realty Ltd. P'ship v. Nelson,*
   708 F. Supp. 1268 (S.D. Fla. 1989) ......................................... 13

**Statutes**

33 U.S.C. § 1251................................................................................. 10

33 U.S.C. § 1341................................................................................... 3

**Rules**

Fed. R. Civ. P. 24 ...................................................... *passim*

**Regulations**

40 C.F.R. § 121.1.................................................................................. 7

40 C.F.R. § 121.3.................................................................................. 7

40 C.F.R. § 121.7.................................................................................. 7

Clean Water Act Section 401 Certification Rule,
    85 Fed. Reg. 42,210 (July 13, 2020)....................................... 1, 6, 7, 9

**Other Authorities**

Wright & Miller, Federal Practice & Procedure (3d ed.) ........................... 13

## INTRODUCTION

Proposed Intervenor National Hydropower Association ("NHA") respectfully seeks leave to intervene as a defendant in the above-captioned matter under Federal Rule of Civil Procedure 24, to protect the interests of NHA and its members in the defense of the United States Environmental Protection Agency ("EPA")'s final rule entitled "Clean Water Act Section 401 Certification Rule," 85 Fed. Reg. 42,210 (July 13, 2020). Plaintiffs[1] have sought judgments declaring that (1) the EPA, in enacting the rule, acted arbitrarily and capriciously and not in accordance with the law, abused its discretion, and exceeded its authority, and (2) the rule is unlawful, justifying vacatur. Dkt. 1 at 78–86. As described below, NHA and its members have direct and substantial interests in the viability of the EPA's rule.

NHA is entitled to intervene in this action as a matter of right under Federal Rule of Civil Procedure 24(a). This motion is unarguably timely, filed during the initial pleading period, while Defendants[2] have just recently filed a still-pending motion to dismiss. NHA represents public and private entities that own hydropower producing facilities, all of whom are directly affected by this rule, which protects them from state overreach and substantial expansion of the statutory scope of Clean Water Act Section 401. Many of NHA's members have been subject to practices employed by the states that abuse the framework established by Clean Water Act Section 401.

---

[1] The Delaware Riverkeeper Network and Delaware Riverkeeper, Maya Van Rossum.

[2] The United States Environmental Protection Agency and Andrew R. Wheeler, in his official capacity as Administrator of the United States Environmental Protection Agency.

If Plaintiffs' lawsuit were successful, this would allow these practices to continue, impeding NHA members' interests in the certainty provided by the EPA's rulemaking and undermining the cooperative federalism established by Section 401. Finally, Defendants do not adequately represent NHA's interests. The EPA is congressionally authorized to protect and maintain the chemical integrity of America's waterways. While NHA generally supports such interests, it is principally interested in promoting the continued sustainability of hydropower as a renewable and reliable energy source.

Notwithstanding NHA's strong showing of its right to intervene, if this Court disagrees, it should still grant NHA permissive intervention. For permissive intervention, NHA need only show that its defense shares a common question of law or fact with the main action, and that intervention will not unduly prejudice the parties. Here, NHA intends to argue, directly contrary to Plaintiffs' allegations, that the EPA enacted its final rule consistent with the Administrative Procedure Act and all other statutory authority. Thus, NHA's defense undoubtedly shares with this action numerous common questions of law and fact. Finally, as noted above, this motion is timely and no parties would be prejudiced by NHA's intervention, especially given NHA's enthusiastic agreement to abide by all of this Court's scheduling orders.

## STATEMENT OF INTERESTS

NHA is a nonprofit national association dedicated to promoting the growth of clean, affordable U.S. hydropower. Declaration of Dennis Cakert ("Cakert Dec.") ¶ 4. NHA seeks to secure hydropower's place as a climate-friendly, renewable, and

reliable energy source that serves environmental, energy, and economic policy objectives.  Cakert Dec. ¶ 4.  NHA represents more than 200 hydropower-industry companies in North America, including public- and investor-owned utilities and independent power producers.  Cakert Dec. ¶ 6.  Its members are involved in projects throughout the United States, including both federal and non-federal hydroelectric facilities.  *See* Cakert Dec. ¶ 6.  In fact, NHA members own and operate the majority of the non-federal waterpower-generating facilities in the United States.  *See* Cakert Dec. ¶ 6.

For over a century, hydropower has generated clean, affordable, and renewable energy.  *See* Cakert Dec. ¶ 7.  Today, hydropower provides energy to over 30 million American homes.  In 2019, hydroelectricity "accounted for about 6.6% of total U.S. utility-scale electricity generation and 38% of total utility-scale renewable electricity generation."  Cakert Dec. ¶ 8.  Hydropower also enables other energy sources, such as wind and solar, greater integration into the power grid, remaining ready to produce power during periods of lower production.  Cakert Dec. ¶ 11.

At present, hydropower developments face a complex web of regulatory regimes and a comprehensive regulatory approval process that involves the Federal Energy Regulatory Commission, federal and state resource agencies, and, most relevant here, water quality certification under section 401 of the Clean Water Act, 33 U.S.C. § 1341, pursuant to the EPA regulations at issue in this case.  Cakert Dec. ¶ 12.  While such regimes and processes offer important safeguards, they can also contain redundancies and inefficiencies that unnecessarily slow the deployment of

clean, renewable hydropower and delay the much-needed environmental enhancements and benefits that it brings.  Cakert Dec. ¶ 13.  For these reasons, NHA and its members—as the regulated community subject to the EPA's rule—have a substantial and direct financial interest in the EPA's rulemaking and interpretations of the Clean Water Act, especially insofar as the EPA curbs state overreach, ensuring that the requirements imposed by states are within the scope and follow the process established by Section 401.  Cakert Dec. ¶¶ 14, 19.

## ARGUMENT

### I.   NHA May Intervene As Of Right

To intervene as of right under Rule 24(a)(2), movant must show (1) "a timely application for leave to intervene"; (2) "a sufficient interest in the litigation"; (3) "a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action"; and (4) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (citations omitted).  The Third Circuit has noted that "policy preference[s]" such as "judicial economy, favor[ ] intervention" as a general matter.  *Id.* (citation omitted).  In any event, "the elasticity that Rule 24 contemplates" renders this determination fact specific based upon the movant's showing on the four elements above.  *Id.* (citation omitted).  Here, NHA meets all of Rule 24(a)(2)'s mandatory intervention requirements.[3]

---

[3] Intervenors are not required to satisfy the requirements for Article III standing to intervene on behalf of defendants.  *See Wayne Land & Mineral Grp., LLC v. Del. River Basin*

## A.    This Motion To Intervene Is Timely

NHA's motion is timely.  To decide if a motion to intervene is timely, the Court considers three factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (citation omitted).  "[T]imeliness is not just a function of counting days; it is determined by the totality of the circumstances." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994).  Thus, when "a party takes reasonable steps to protect its interest," timeliness grounds will not be a substantial hurdle.  *Id.* at 1182.  Here, Defendants have just recently filed their motion to dismiss in response to Plaintiffs' Complaint, meaning that NHA seeks to intervene in this lawsuit at the earliest possible "stage of the proceeding." *Wallach*, 837 F.3d at 371.  Fellow proposed intervenors American Petroleum Institute and Interstate National Gas Association of America have pending motions to intervene, Dkt. 13, and NHA's motion has been filed before this Court has even received the administrative record on which its decision will necessarily be based.  Therefore, given the minimal litigation activity thus far, neither Plaintiffs nor Defendants would suffer any prejudice from NHA's intervention.  *See Alcan Aluminum*, 25 F.3d at 1181.  And there has been no delay in NHA filing this motion, meaning NHA has taken "reasonable steps to protect its interest" in these proceedings.  *Id.* at 1182.

---

*Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020).  Nevertheless, NHA satisfies all standing criteria, *see infra* Parts I.B., I.C., as Plaintiffs' lawsuit presents the direct threat of "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (citations omitted).

B.    NHA Has A Direct And Significant Interest In The Continued Enforcement Of Defendants' Final Rule

A proposed intervenor also must "claim[ ] an interest relating to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2), an interest the Third Circuit has required to be "significantly protectable," *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (citations omitted).  When defining the limits of this "nebulous" standard, *Kleissler*, 157 F.3d at 969, the Court has held that a movant "must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene," *Mountain Top*, 72 F.3d at 366 (citation omitted), which interest must be more than one of a general and indefinite character, *Brody by & through Sugzdinis v. Spang*, 957 F.2d 1108, 1116 (3d Cir. 1992).  Of particular relevance here, courts have held that persons who are "precisely those [the government] intended to protect" with a law or regulation satisfy the interest test.  *Fresno Cty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

In enacting the final rule, the EPA expressly provided that "[t]his final rule modernizes and clarifies the EPA's regulations and will help States, Tribes, federal agencies, and project proponents know what is required and what to expect during a section 401 certification process, thereby reducing regulatory uncertainty."  85 Fed. Reg. at 42,236.  To that end, the rule clarifies that a Clean Water Act Section 401 certification "is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements," which requirements it defines as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges

into waters of the United States." *Id.* at 42,285 (quoting proposed rules 40 C.F.R. §§ 121.1(n) & 121.3). The rule also requires all conditional grants or denials of certification requests to include justification and direct citation to the water quality standard impacted by the project. *Id.* at 42,286 (quoting proposed rule 40 C.F.R. § 121.7). And the rule honors the statutory text by making clear that States cannot evade the statute's one-year maximum for acting on permit application under Section 401, *id.* at 42,235, 42,261, consistent with the D.C. Circuit's reasoning in *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099 (D.C. Cir. 2019).

NHA has a substantial interest in the rule at the center of this litigation, for which intervention is necessary. In their Complaint, Plaintiffs specifically challenge the EPA's rule in multiple respects, claiming that it violates the Administrative Procedure Act and Clean Water Act, among other things. Dkt. 1 at 78–86. Plaintiffs seek to have this Court enter an "Order vacating and setting aside the . . . Rule," as well declaring the rule "arbitrary capricious, and otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations; short of statutory right; and contrary to constitutional right, power, privilege, or immunity." *Id.* at 86. Thus, Plaintiffs' success in this lawsuit would be a direct "threat to [NHA's] legally cognizable interest," *Mountain Top*, 72 F.3d at 366, in the continued protection and certainty provided by the rule, which explicitly lists "project proponents" like NHA's members among those it is intended to "help." 85 Fed. Reg. at 42,236. NHA's members who operate non-federal waterpower-generating facilities are subject to Clean Water Act Section 401 certification requirements, and are "precisely those

[project proponents] [the EPA] intended to protect" with this rulemaking. *Andrus*, 622 F.2d at 438. As an association representing companies that are directly regulated under the Clean Water Act, NHA has a concrete interest in defending the EPA's regulations, and falls within the class of parties routinely granted intervention of right in cases reviewing agency actions. *Cf. Mil. Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998). Therefore, NHA has a "significantly protectable legal interest," *Mountain Top*, 72 F.3d at 366 (citation omitted), that is neither general nor indefinite, *Brody*, 957 F.2d at 1116, and which the outcome of this case, and the continued applicability of the rule, will affect.

### C.     NHA's Ability To Protect Its Interests, As A Practical Matter, May Be Impaired Or Impeded By The Disposition Of This Action

Having established that NHA has a sufficient interest in this litigation, it next must show that the interest "is in jeopardy in the lawsuit." *Pennsylvania v. President of the U.S. of Am.*, 888 F.3d 52, 59 (3d Cir. 2018) (citation omitted). Thus, a moving party must "demonstrate that [its] legal interests may be affected or impaired[ ] as a practical matter by the disposition of the action." *Brody*, 957 F.2d at 1122 (citation omitted). This "practical" standard allows for consideration of "*any* significant legal effect on the applicant's interest, including a decision's stare decisis effect or a proposed remedy's impact on the applicant for intervention." *Pennsylvania*, 888 F.3d at 59 (emphasis added; citation omitted).

Here, there is no doubt that NHA's and its members' interests will be adversely affected by this lawsuit if Plaintiffs prevail. Plaintiffs seek to invalidate entirely the EPA rule, which rule benefits NHA and its members by clarifying the scope and

process for receiving Clean Water Act Section 401 certifications, thereby curbing state overreach.   Dkt. 1 at 78–86.   This rule "promote[s] consistent implementation of section 401 and streamline[s] federal license and permit processes," 85 Fed. Reg. at 42,220, and "eliminates the possibility of inconsistent interpretation and enforcement of the certification conditions in the federal license or permit," thereby "increasing the likelihood that project proponents will be able to comply with the certification conditions," *id.* at 42,276.   NHA and its members, or "project proponents," are expressly among the entities that EPA intended this rule to "help."   *Id.* at 42,236.   If Plaintiffs are successful, then NHA and its members will face a more confusing and uncertain regulatory process for any new hydropower projects, without the "help" of the EPA's recent regulatory progress.   *Id.*   Thus, Plaintiffs seek a new regime that places NHA's and its members' interests in the continued EPA rule "in jeopardy in the lawsuit," *Pennsylvania*, 888 F.3d at 59 (citation omitted), which would gravely harm NHA and its members engaged in the hydropower industry.   Therefore, this factor also supports mandatory intervention.

###### D.   The Existing Parties Do Not Adequately Represent NHA's Interests

For the final, adequacy-of-representation element, the "minimal" burden falls on the applicant to show that his interests are not adequately represented by the existing parties.   *Brody*, 957 F.2d at 1123.   Such representation may be inadequate for any of the following three reasons: "(1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between

the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *Id.* (citation omitted).  The movant's minimal burden will be satisfied by "show[ing] that representation of [its] interest[s] '*may be*' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added).  If a private party seeks to intervene and join the defense with a government entity, intervention is necessary "when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light." *Pennsylvania*, 888 F.3d at 60–61 (quoting *Kleissler*, 157 F.3d at 972); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736–37 (D.C. Cir. 2003).

No party to the dispute will adequately represent NHA's and its members' interests, and NHA has met this "minimal" burden.  *Brody*, 957 F.2d at 1123. Plaintiffs obviously cannot represent NHA's interests, because these two are diametrically opposed regarding the viability of the EPA's rulemaking.  Nor can Defendants or other proposed-intervenors adequately represent NHA's interests. Defendant EPA Administrator is the federal official charged with administering the Clean Water Act and implementing Congressional objectives.  33 U.S.C. § 1251(d). Central to these Congressional objectives is his duty "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  *Id.* § 1251(a). Proposed Intervenors American Petroleum Association and Interstate Natural Gas Association of America represent the "natural gas and oil industr[ies]," whose interactions with Section 401 certifications arise in different sets of circumstances,

and both are interested solely with these "unique and critical interests" of that industry.   Dkt. 13 at 2.   NHA, on the other hand, is "dedicated to promoting the growth of clean, affordable U.S. hydropower."  Cakert Dec. ¶ 4.  While the *benefits* of hydropower include its status as a "climate-friendly, renewable, and reliable energy source that serves national environmental, energy, and economic policy objectives," Cakert Dec.  ¶ 4, NHA's core interests are the promotion of hydropower as an industry.  And NHA's members are regulated by the rule, while the EPA is regulator. Cakert Decl. ¶¶ 12, 14.  This gives NHA the "more parochial views of a proposed intervenor whose interests are personal to it," rather than goals in line with the EPA's broader concerns.  *Pennsylvania*, 888 F.3d at 60–61.

That NHA and the EPA are likely to have the same *ultimate* goal—defending the EPA's rule—is insufficient to deny NHA intervention as of right.  The EPA may well be focused to a greater extent than NHA on issues of administrative convenience and flexibility.   On the other hand, NHA is likely to be focused to a greater degree than the EPA on the impact of the rule—and its potential vacatur—on the business of NHA's members and more broadly on the development of hydropower as an important renewable resource.  As the Third Circuit has held, interests sufficiently diverge for purposes of intervention when a government entity's concerns are broader than the business motives of a proposed intervenor.  *Kleissler*, 157 F.3d at 972; *see also Fund for Animals*, 322 F.3d at 736 ("[W]e have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.").  Therefore, the Court cannot assume that the EPA "will sufficiently

attend to [NHA's] specific interests as it attempts to uphold [the rule] in [its] entirety." *Pennsylvania*, 888 F.3d at 61.  And given this likely distinction between NHA and the EPA, "there is sufficient doubt about the adequacy of representation to warrant intervention."  *Trbovich*, 404 U.S. at 538.  Therefore, this element too supports NHA's motion for intervention of right.

*     *     *

For these reasons, NHA has met its burden on all four elements of intervention as of right, and the Court should grant this motion.

## II.   Alternatively, This Court Should Grant NHA Permissive Intervention

Should the Court conclude that NHA is not entitled to intervene as a matter of right, the Court should nonetheless permit NHA to intervene under Rule 24(b).  For a timely motion for permissive intervention as a defendant, the Court must consider whether the movant has a "defense that shares with the main action a common question of law or fact," and "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b).

Permissive intervention here is plainly appropriate.  NHA intends to litigate in defense of the rule, and, given Plaintiffs' Complaint, *see generally* Dkt. 1, this places NHA's defense within the confines of the "main action."  Fed. R. Civ. P. 24(b).  Furthermore, and as discussed above, *see*, *supra*, Part I.A., the case is in its infancy, so neither Plaintiffs nor Defendants will suffer any prejudice if NHA is permitted to intervene.  *See Wallach*, 837 F.3d at 371.  And, finally, NHA is willing to abide by all of the Court's scheduling orders, further supporting permissive intervention here, as

there is no legitimate risk that NHA's participation will cause any delays or prejudice. Therefore, even if this Court concludes that NHA may not intervene as of right, it should then grant it permission to intervene in this lawsuit.

## III.   NHA Should Be Permitted To File Its Answer After The Named Defendants

Although, generally, a motion to intervene should "be accompanied by a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), courts will typically permit a movant to intervene without filing a pleading at that time, so long as the intervention motion provides enough information to inform the court of the ground for the motion, *see, e.g.*, *Philadelphia Recycling & Transfer Station, Inc. v. City of Philadelphia*, Civ. A. No. 95-4597, 1995 WL 517644, at *3 (E.D. Pa. Aug. 29, 1995); *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980); 7C Wright & Miller, Federal Practice & Procedure § 1914 (3d ed.).  In such cases, an intervening party may be permitted to later file a complying pleading.  *See, e.g.*, *Marshall v. Meadows*, 921 F. Supp. 1490, 1492 (E.D. Va. 1996); *WJA Realty Ltd. P'ship v. Nelson*, 708 F. Supp. 1268, 1272 (S.D. Fla. 1989).

Here, the Court should permit NHA to file its pleading within a reasonable time after the named Defendants.  Doing so will aid the Court in efficiently governing the proceedings, by allowing NHA to answer or otherwise plead in a manner not duplicative of the named Defendants, while still protecting its noted, ample interests in this litigation.  *See supra* Parts I.B.–C.  Nor will allowing NHA to proceed in this manner prejudice other parties.  This Motion provides abundant support for NHA's intervention interests, such that this Court can adequately evaluate the issues and

- 13 -

grant NHA intervention, even without a corresponding pleading.  *See Philadelphia Recycling*, 1995 WL 517644, at *3.  Nor will it lead to any delays, as the named Defendants have not yet filed their own responsive pleading, and NHA has agreed to follow all of this Court's future orders to proceed as expeditiously as possible.

## CONCLUSION

The Court should grant NHA's motion to intervene.

Dated, October 15, 2020

Respectfully submitted,

/s/ *John L. Schweder II*

CHARLES SENSIBA
*Pro hac vice forthcoming
TROUTMAN PEPPER HAMILTON
SANDERS LLP
401 9th Street N.W., Suite 1000
Washington, D.C. 20004
(202) 274-2850
(202) 274-2994 (fax)
charles.sensiba@troutman.com

ANDREA W. WORTZEL
*Pro hac vice forthcoming
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1406
(804) 697-1339 (fax)
andrea.wortzel@troutman.com

JOHN L. SCHWEDER II
PA Attorney I.D. 208595
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4170
(215) 981-4750
john.schweder@troutman.com

MISHA TSEYTLIN
*Pro hac vice forthcoming
SEAN T.H. DUTTON
*Pro hac vice forthcoming
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
sean.dutton@troutman.com