IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DELAWARE RIVERKEEPER NETWORK, et al.**<br><br>   v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.** | **CIVIL ACTION**<br><br><br>**NO. 20-3412** |

**MEMORANDUM RE MOTION TO DISMISS AND MOTIONS TO INTERVENE**

**Baylson, J.**                                                                                                   **December 18, 2020**

**I.     Introduction**

In this case brought by an environmental organization against the United States Environmental Protection Agency (EPA) regarding a new environmental regulation, Defendants have filed a Motion to Dismiss under Rule 12(b)(1) arguing that this case is not ripe for review and that Plaintiffs lack standing. For the reasons stated below, Defendant's Motion to Dismiss will be denied. Additionally, all pending Motions to Intervene will be granted.

**II.    Facts and Procedural History**

Plaintiffs are the Delaware Riverkeeper Network (DRN), an environmental and community organization the goal of which is "to protect and restore the Delaware River, its tributaries, and habitats," and Maya Van Rossum, "a full-time privately-funded ombudsman who is responsible for the protection of the waterways in the Delaware River Watershed." (Plaintiff's Opp'n 2, ECF 25.) Plaintiffs allege that they participate in recreational activities in and around the Delaware River and that they own property within the Delaware River watershed. (Compl. ¶¶ 288–89, ECF 1.) Defendants are the EPA, and Andrew Wheeler, the Administrator of the EPA.

At issue in this case is a new EPA regulation that governs water quality certifications under Section 401 of the Clean Water Act (CWA), 33 U.S.C. 1341. Section 401 requires that before a

federal agency issues a permit or license to conduct any activity that may result in a discharge into waters of the United States, the state or authorized tribe where the discharge would originate, also known as the certifying authority, must issue a Section 401 water quality certification.  33 U.S.C. 1341(a)(1).  The certifying authority has several options when considering a certification: it can grant certification, grant certification with conditions, deny certification, or waive the certification requirement.  33 U.S.C. 1341(a)(1), (2).  This decision is primarily based on ensuring the federally-licensed or permitted activity complies with water quality standards, effluent limitations, new source performance standards, toxic pollutant restrictions, and other appropriate water quality requirements of state or tribal law.  33 U.S.C. 1341(a)(3).  The certifying authority must act on a request "within a reasonable period of time (which shall not exceed one year)."  33 U.S.C. § 1341(a)(1).

On July 13, 2020, the final Clean Water Act Section 401 Certification Rule was promulgated (the Certification Rule), 85 Fed. Reg. 42,210 (July 13, 2020) (to be codified at 40 C.F.R. Part 121).  Plaintiffs describe the change as "a procedural and substantive overhaul of the Clean Water Act's Section 401 program."  (Opp'n 1.)  They allege that "the scope [of the certification program] is so narrowed, that it renders Section 401 superfluous."  (Compl. ¶ 7.)

Plaintiffs' complaint argues that the Certification Rule violates the Administrative Procedure Act (APA), 5 U.S.C. § 706; the CWA, 33 U.S.C. §§ 1251–1388; and the Tenth Amendment, U.S. Const., amend X.  They seek a declaratory judgment providing that Defendants are in violation of the APA, the CWA, and the Tenth Amendment, as well as an order vacating the Certification Rule, and attorneys' fees.

Plaintiffs' allege two types of harm that they have suffered as a result of the Certification Rule both of which are based on their "interests in the waters of the Delaware River watershed,

which have been made vulnerable to degradation under Defendants' Certification Rule." (Compl. ¶ 285.). The first harm is the "substantial[ly] increased risk that Federally licensed and permitted projects will degrade the resources of the Delaware River watershed," and the second is "the curtailment of Plaintiffs' ability to advocate for greater environmental protections in the Section 401 certification process, and to participate in the pollution control efforts of certifying authorities." (Opp'n 15.)

The Complaint alleges that the Certification Rule will harm these interests by curtailing the ability of "certifying authorities to take a holistic approach in protecting water quality from the effects of Federally licensed or permitted projects." (Compl. ¶ 286.) They argue that this "creates a substantial risk that the Delaware River watershed will be subject to increased land cover change, deforestation, sedimentation and erosion, water quality degradation, stream degradation, wetland loss, and air emissions." (Compl. ¶ 287.) Plaintiffs point to specific changes in the Certification Rule which limit when the certification process is triggered and what a certifying authority may consider during the certification process. For example, the new rule "circumscribes the ability of the Delaware River watershed states (New York, New Jersey, Pennsylvania, and Delaware) to protect their waters beyond point source discharge regulations." (Compl. ¶ 19.) A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

Among other changes with which Plaintiffs take issue is that the Certification Rule "creates a mechanism that allows [the] Federal agency to deem a certification and/or its conditions 'waived,' deprives these states of their authority to enforce certification conditions, permits the

3

EPA to decline to analyze the effects of a discharge on a neighboring state, and limits a neighboring state's authority to impose additional conditions on a Federal license or permit." (Compl. ¶ 19.) The Certification Rule also allows the "reasonable period of time" in which a certifying authority must make its decision to begin earlier, such that the reasonable period of time may begin before complete information is submitted to the certifying authority. (Compl. ¶¶ 232–233.)

### III. Parties' Arguments

#### a. Defendants EPA and Andrew Wheeler

Defendants argue that this case should be dismissed because it is not ripe and Plaintiffs lack standing. Defendants assert that this regulation will not be ripe for review until there is a concrete application of the rule which harms or threatens harm to Plaintiffs. Defendants claim that without a concrete application, Plaintiffs cannot identify a harm to their interests and thus their claims are not ripe. Defendants also argue that Plaintiffs do not have standing because there is no injury in fact. Again, they argue that because the rule has not been applied yet, any alleged harms are highly speculative, and not imminent or concrete.

#### b. Plaintiffs DRN and Maya Van Rossum

Plaintiffs argue that a project-specific review is not necessary. They argue that their claims present purely legal issues and are based entirely on the text of the Certification Rule, administrative record, and existing law. They challenge the rule-making process, not its application in a specific instance. They assert two main theories for why this case is ripe and why they have standing. First, the fundamental changes to the rule which apply to every certification request as of September 11, 2020 "immediately creates a substantial risk that Federally licensed and permitted projects will degrade the resources of the Delaware River watershed." (Opp'n 2.)

4

Second, the Rule "curtails Plaintiffs' ability to advocate for greater environmental protections in the Section 401 certification process." (Opp'n 3.)

**IV.     Legal Standard**

In reviewing a Motion to Dismiss pursuant to Rule 12(b)(1), the Court must first determine "whether the movant presents a facial or factual attack." In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." Constitution Party v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). A factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." Id. "In sum, a facial attack 'contests the sufficiency of the pleadings,' 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" Id. (first quoting In re Schering-Plough Corp., 678 F.3d at 243, then quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)) (alterations in original).

When, as here, the Court is considering a facial attack, the Court applies the same standard of review as when considering a motion to dismiss under Rule 12(b)(6). Id. Therefore, the Court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**V.     Ripeness**

5

The "basic rationale" of ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967).  The ripeness inquiry as laid out in Abbott Labs requires Courts to consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  Id. at 149.  Courts in the Third Circuit "apply a somewhat refined test for ripeness" laid out in Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643 (3d Cir. 1990).  Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 539 (3d Cir. 2017).  Under this test Courts "look to (1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment."  Id. at 540.  While the "Step-Saver test differs in form from the ripeness test articulated in Abbott Labs . . . it is merely a different framework for conducting the same justiciability inquiry."  Id.  The Third Circuit has applied both tests, choosing one over the other based on which "framework better accommodates [the Court's] analysis." Philadelphia Fed'n of Teachers v. Ridge, 150 F.3d 319, 323 n.4 (3d Cir. 1998).  The Court will apply the Step-Saver test, as it is more specific and applicable to this context.

  a. **Adverse Interests**

"Parties' interests are adverse where harm will result if the declaratory judgment is not entered." Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995).  The Third Circuit has stated that when a "plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III."  Armstrong World Industries, Inc. v. Adams, 961 F.2d 405, 412–13 (3d Cir. 1992). However, "where threatened action by government is concerned, we do not require a plaintiff to

6

expose himself to liability before bringing suit to challenge the basis for the threat." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128–29 (2007). Therefore, "the party seeking review need not have suffered a completed harm to establish adversity"—it suffices that there is a "substantial threat of real harm and that the threat . . . remain real and immediate throughout the course of the litigation." Plains All Am. Pipeline, 866 F.3d at 541 (Presbytery of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994)).

The parties' interests here are sufficiently adverse because there is a "substantial threat of real harm" to Plaintiffs if the Certification Rule remains in effect. Plaintiffs have pointed to multiple changes to the Section 401 certification process which would harm their interests were there to be a federally-approved project in the Delaware River watershed in the future. While Plaintiffs have not provided information as to how often there are projects subject to the certification process in this area, because the Certification Rule applies to every project in such a way that would harm them, it is reasonable to assume that this harm is likely to occur.

### b. Conclusiveness

Next, a case must be based on "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." Florio, 40 F.3d at 1463. "[P]redominantly legal questions are generally amenable to a conclusive determination in a preenforcement context." Id. at 1468. There are two issues relevant to this analysis. First, whether "the legal status of the parties" will "be changed or clarified." Plains All Am. Pipeline, 866 F.3d at 543 (quoting Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1155 (3d Cir. 1995)). Second, "whether further factual development . . . would facilitate decision" or "the question presented is predominantly legal." Id. (quoting NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 344 (3d Cir. 2001)).

With respect to the first issue, the declaratory and injunctive relief sought by Plaintiffs would change and clarify the legal status of the parties. If this Court were to invalidate the Certification Rule, the prior Section 401 program would be reinstated. Second, there is no further factual development necessary to facilitate this Court's decision. Plaintiff's complaint is based entirely on the Rule itself and the administrative record, arguing that they do not comport with the APA, CWA, and Tenth Amendment. As the challenge brought is specifically based on the rule-making process and the EPA's authority to make such a rule, the rule's application in a specific context would not be helpful to the Court's analysis.

### c. Practical Utility

"Practical utility goes to 'whether the parties' plans of actions are likely to be affected by a declaratory judgment,' and considers the hardship to the parties of withholding judgment." NE Hub Partners, 239 F.3d at 344–45 (quoting Step-Saver, 912 F.2d at 649 n.9). A declaratory judgment "must be of some practical help to the parties. The Declaratory Judgments Act was enacted to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future." Travelers Ins. Co., 72 F.3d at 1155.

Plaintiffs' alleged harm here occurs as a result of the implementation of the Certification Rule. If the Court were to make a judgment in Plaintiffs' favor, and the previous certification program were reinstated, the harm against Plaintiffs would be resolved in its entirety. Therefore, this result would be "of some practical help" to Plaintiffs.

## VI. Standing

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" Susan B. Anthony List

v. Driehaus, 573 U.S. 149, 157–58 (2014) (quoting Lujan v. Defenders of Wildlife, 504 U. S. 555, 560–61 (1992)). Defendants' arguments focus specifically on the injury-in-fact requirement. The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" Id. at 158 (quoting Warth v. Seldin, 422 U. S. 490, 498 (1975)). The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U. S. at 560. Future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk that the harm will occur." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013).

An association has standing if it "demonstrates that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" Pa. Psychiatric Soc'y v. Green Spring Health Servs., 280 F.3d 278, 283 (3d Cir. 2002) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).

Defendants' emphasize the Supreme Court's decision in Summers v. Earth Island Inst., 555 U.S. 488 (2009). In Summers, a group of environmental organizations sought to prevent the Forest Service from enforcing regulations that exempted certain smaller projects from the notice, comment, and appeal process used by the Forest Service for more significant projects. Id. at 490. The Court noted that the regulations at issue "neither require[d] nor forbid any action on the part of" the environmental organizations. Id. at 493. The regulations "govern[ed] only the conduct of Forest Service officials engaged in project planning." Id. However, the Court also noted that "'when the plaintiff is not himself the object of the government action or inaction he challenges,

9

standing is not precluded, but it is ordinarily substantially more difficult' to establish.'" Id. (quoting Lujan, 504 U.S. at 562).

The Court in Summers discussed extensively an affidavit submitted by a member one of the environmental organizations. First, the Court noted that the affiant's assertions of past injury would not suffice for the injury-in-fact requirement. Id. at 495. Next, the Court noted that the affiant's assertion that he had "visited many national forests and plan[ned] to visit several unnamed national forests in the future" was insufficient because it was "hardly a likelihood" that the affiant would encounter a project subject to the unlawful regulation. Id. The Court noted that "without further specification it is impossible to tell which projects are (in respondents' view) unlawfully subject to the regulations." Id. Similarly, the Court found that the affidavit did reference projects in a specific area which were subject to the challenged regulation but that the affiant did not state a firm intention to visit that location, only that he "wants to go there." Id. at 496.

Plaintiffs distinguish this case from Summers on the basis that the Certification Rule is both a substantive and procedural rule which applies to all projects going forward. (Opp'n 18.) Their allegations of harm are more specific in terms of which potential projects the Certification Rule applies to (all of them), as well as the physical location that is of concern (the Delaware River watershed). Further, because the Certification Rule alters the substantive requirements of the certification process for every project that will occur in the future, the likelihood of harm is more significant here than in Summers.

## VII. Motions to Intervene

The Court will grant as unopposed the Motions to Intervene by: (1) the States of Louisiana, Montana, Arkansas, Mississippi, Missouri, Texas, West Virginia, and Wyoming (ECF 8), (2) the

American Petroleum Institute and the Interstate Natural Gas Association of America (ECF 13), and (3) the National Hydropower Association (ECF 32).

## VIII. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss will be denied. An appropriate order follows.

/Volumes/Judge Baylson/CIVIL 20/20-3412 Del Riverkeeper v EPA/20cv3412 Memorandum Re MTD.docx