Kacy C. Manahan, Esquire
Delaware Riverkeeper Network
Pa. Attorney No. 329031
N.J. Attorney No. 275122018
925 Canal Street, Suite 3701
Bristol, PA 19007
215-369-1188 x115
kacy@delawareriverkeeper.org
*Attorney for Plaintiffs Delaware Riverkeeper Network*
*and the Delaware Riverkeeper, Maya van Rossum*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELAWARE RIVERKEEPER NETWORK, et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 2:20-cv-03412** |
| **U.S. ENVIRONMENTAL PROTECTION AGENCY, et al,** | ) ) ) | **Michael M. Baylson, J.** |
| **Defendant.** | ) ) ) | |

---

### PLAINTIFFS' RESPONSE TO
### DEFENDANTS' MOTION TO REMAND WITHOUT VACATUR

Plaintiffs Delaware Riverkeeper Network and the Delaware Riverkeeper,

Maya van Rossum ("Plaintiffs") respectfully submit this response to the Motion for

Remand Without Vacatur filed by Defendants the United States Environmental

Protection Agency ("EPA") and Michael S. Regan, in his official capacity as the

Administrator of EPA ("Defendants"). (ECF No. 67). Plaintiffs request that remand be accompanied by vacatur of the Section 401 Certification Rule, 85 Fed. Reg. 42,210 (July 13, 2020) ("Rule"), or, in the alternative, that the case proceed to the merits.

EPA has taken an important first step towards resolving the issues created by the promulgation of the Rule, and "intends to reconsider and revise" the Rule "to restore the balance of state, Tribal, and federal authorities consistent with the cooperative federalism principles central to [§ 401 of the Clean Water Act, 33 U.S.C. § 1341]" based on "substantial concerns" with the Rule. Goodin Decl. at ¶¶ 11, 12 (ECF No. 67-1). *See also* Notice of Intention to Reconsider and Revise the Clean Water Act Section 401 Certification Rule, 86 Fed. Reg. 29,541, 29,542–44 (June 2, 2021). According to EPA's tentative timeline, which is "subject to change for a variety of reasons," the EPA Administrator expects to sign the final rule and preamble in spring 2023. Goodin Decl. at ¶¶ 16–27 (ECF No. 67-1). Despite EPA's concerns and a clear recognition of the legal infirmities identified by Plaintiffs and other litigants and stakeholders, Defendants now seek a voluntary remand from this Court *without* vacatur, leaving the Rule in place to be implemented during the pendency of EPA's rulemaking process. (ECF No. 67).

While Plaintiffs agree that many of the topics identified by Defendants in their Notice of Intent should be reconsidered, and encourage the revision or rescission of

the Rule, Plaintiffs would be unduly prejudiced by a remand without vacatur. Thus,

Plaintiffs request that this Court grant Defendants' motion in part, remanding the

Rule to EPA, but deny Defendants' request to leave the Rule in place and instead

vacate the Rule. In the alternative, should this Court conclude that vacatur is not

warranted, Plaintiffs oppose Defendant's motion and respectfully request that the

case proceed to the merits.

**BACKGROUND**

On April 10, 2019, former President Trump issued Executive Order 13868:

Promoting Energy Infrastructure and Economic Growth, 84 Fed. Reg. 15,495. That

order directed EPA to review its regulations pertaining to § 401 of the Clean Water

Act for consistency with policies set forth in the order, including to "promote private

investment in the Nation's energy infrastructure," effectuate "timely action on

infrastructure projects that advance America's interests and ability to participate in

global energy markets," and to support "American ingenuity, the free market, and

capitalism." *Id.* Executive Order 13868 directed EPA to propose new § 401

regulations within 120 days. *Id.*

The proposed rule was published on August 22, 2019, and public comment

closed on October 21, 2019. *See* Updating Regulations on Water Quality

Certifications, 84 Fed. Reg. 44,080. During the public commenting period, Plaintiffs

and many other stakeholders submitted comments raising serious legal and practical

concerns about the proposed rule and its effects. On July 13, 2020, the final Clean Water Act Section 401 Certification Rule was published. *See* Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42,210. On September 11, 2020, the Rule went into effect. *Id.*

On September 14, 2020, Defendants moved to dismiss Plaintiffs' complaint for lack of jurisdiction, arguing that Plaintiffs lacked standing and that their claims were not ripe. (ECF No. 16). That motion was denied by order of this Court on December 18, 2020. (ECF No. 47).

On January 20, 2021, President Biden was inaugurated and issued Executive Order 13990: Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, 86 Fed. Reg. 7037 (Jan. 25, 2021). That order directed federal agencies to review federal regulations promulgated during the previous four years to address any conflicts with the policies of the new administration

> to listen to the science; to improve public health and protect our environment; to ensure access to clean air and water; to limit exposure to dangerous chemicals and pesticides; to hold polluters accountable, including those who disproportionately harm communities of color and low-income communities; to reduce greenhouse gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

*Id.* The Rule was specifically identified by President Biden as an agency action to be reviewed in accordance with Executive Order 13990.

Accordingly, on February 10, 2021, the parties in this case agreed to an abeyance to allow Defendants to evaluate the Rule. (ECF No. 57). On May 27, 2021, EPA announced its intent to revise the Rule while leaving it in place during the pendency of that revision. *See* Notice of Intention, 86 Fed. Reg. 29,541. The abeyance in this case ended on June 18, 2021, when Defendants provided a status report detailing its progress on the Rule and proposing a briefing schedule for Defendant's Motion for Voluntary Remand Without Vacatur that is now before this Court. (ECF No. 65). In accordance with the approved briefing schedule, Defendants filed their motion on July 1, 2021. (ECF No. 67).

## STANDARD OF REVIEW

An agency's request for voluntary remand "may be granted only when the agency intends to take further action with respect to the original agency decision on review." *Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 97 (D.D.C. 2019) (quoting *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017)). If that requirement is met, the court then has broad discretion to grant or deny the request. *Id.* (citing *Util. Solid Waste Activities Grp. v. Envt'l Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018)). Although typically a motion for voluntary remand is filed in response to intervening events outside of the agency's control such

as new law or new evidence, an agency "may request a remand (without confessing error) in order to reconsider its previous position," which may be granted after consideration as to "'whether the remand would unduly prejudice the non-moving party' and whether 'the agency's request appears to be frivolous or made in bad faith.'" *Id.* at 97–98 (quoting *Util. Solid Waste*, 901 F.3d at 436).

"Where an agency action is remanded for further proceedings, the determination of whether or not also to vacate the agency action is left to the court's discretion." *Nat. Res. Def. Coun. v. U.S. Envt'l Prot. Agency*, 676 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (citing *Sugar Cane Growers Co-op of Fla. v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002)).   The Third Circuit, as well as this Court, have favorably cited the D.C. Circuit's *Allied-Signal* factors when assessing whether vacatur is appropriate. *See, e.g. Prometheus Radio Proj. v. Fed. Comm. Comm'n*, 824 F.3d 33, 52 (3d Cir. 2016); *Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 933 F. Supp. 2d 700, 713–16 (E.D. Pa. 2013). Under that test, "[t]he decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (quoting *Int'l Union, UMW v. FMSHA*, 920 F,2d 960, 967 (D.C. Cir. 1990)).

## LEGAL ARGUMENT

### A. Vacatur of the Rule is warranted due to its serious deficiencies and would not result in disruptive consequences.

The Rule has serious deficiencies, as acknowledged by EPA, and vacatur would not cause disruptive consequences. Thus, vacatur of the Rule is warranted and would eliminate any risk of undue prejudice to Plaintiffs. The first *Allied-Signal* factor is easily satisfied, as many serious deficiencies of the Rule are readily apparent and agreed upon. In their motion for voluntary remand, Defendants admit that "EPA has identified 'substantial and legitimate concerns' with the Certification Rule and has publicly announced its intention to reconsider and revise the Rule." (ECF No. 67 at 7). Indeed, EPA's concerns "mirror many of Plaintiff's allegations." (*Id.* at 8.) Thus, the seriousness of the Rule's deficiencies leads to considerable doubt as to whether it chose correctly.

As to whether vacatur will cause a disruptive interim change that may itself be changed, the D.C. Circuit has recognized that "the second *Allied-Signal* factor is weighty only insofar as the agency may be able to rehabilitate its rationale for the regulation." *Comcast Corp. v. F.C.C.*, 579 F.3d 1, 9 (D.C. Cir. 2009) (citing *Allied-Signal*, 988 F.2d at 150–51). Given that EPA "has identified substantial concerns with a number of provisions of the [Rule] that relate to cooperative federalism principles and CWA Section 401's goal of ensuring that states are empowered to protect their water quality," it is highly unlikely that EPA will seek to rehabilitate its

rationale for the Rule. Rather, "EPA plans to *reconsider and revise* the [Rule] consistent with the principles outlined in [Executive Order 13990]", a decision based in part on "issues raised in the ongoing litigation challenges to the [Rule]." Notice of Intention, 86 Fed. Reg. at 29,542.

In addition, the Ninth Circuit considers "whether vacating a faulty rule could result in possible environmental harm." *Pollinator Stewardship Council v. U.S. Envt'l Prot. Agency*, 806 F.3d 520, 532 (9th Cir. 2015). Here, vacating the Rule would *prevent* environmental harm, and return the § 401 certification process to the *status quo ante*, reestablishing the cooperative federalism that existed for the past fifty years. *See Comite de Apoyo*, 933 F. Supp. 2d at 715.

The Rule is a deregulatory action taken pursuant to former President Trump's directive to overhaul the § 401 certification process to conform with a policy of promoting private investment in the Nation's energy infrastructure. *See* Executive Order 13868 § 2, 84 Fed. Reg. 15,495 (Apr. 15, 2019). *See also* Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. at 42,211.  Under the Rule, the ability of certifying authorities to deny or condition a § 401 certificate based on water quality concerns is substantially curtailed. *See* 40 C.F.R. §§ 121.1(f) (defining "discharge" as a discharge from a point source into a water of the United States), 121.1(n) (defining "water quality requirements" to mean only Clean Water Act requirements or state or tribal regulatory requirements for point source discharges

into waters of the United States), 121.3 (limiting the scope of certification to assuring that a "discharge" will comply with "water quality within which to make a certification decision based on a limited amount of information from an applicant. *See id.* §§ 121.5, 121.6 (defining the contents of a "certification request" sufficient to start the clock on a "reasonable period of time" within which a certifying authority must act).

If a certifying authority attempts to act outside of these narrow bounds to protect water quality, then the Federal agency issuing the license or permit may overrule the certifying authority and deem the certification (or specific conditions upon a certification) waived. *See id.* §§ 121.7, 121.9, 121.10. Finally, the Rule creates a loophole by making the determination as to whether a project affects water quality in a neighboring jurisdiction entirely discretionary with EPA's Administrator. *See id.* § 121.12.

EPA states in its Notice of Intent that it is "concerned that the rule constrains what states and tribes can require in certification requests, potentially limited state and tribal ability to get information they may need before the CWA Section 401 review process begins," "that the rule does not allow state and tribal authorities a sufficient role in setting the timeline for reviewing certification requests," and that, ultimately "the rule's narrow scope of certification and conditions may prevent state and tribal authorities from adequately protecting their water quality." Notice of

Intent, 86 Fed. Reg. at 29,543. Much like in *Pollinator Stewardship Council*, leaving

the Rule in place "risks more potential environmental harm than vacating it," and

"on remand, a different result may be reached." 806 F.3d at 532–33.

The disruptive effect of vacating the Rule is minimal—the rule went into

effect on September 11, 2020, and has thus applied to a limited number of

certification proceedings, many of which have yet to be resolved within the

"reasonable period of time." Should the Rule remain in place, the harms associated

with its application may become "locked in" for a growing number of Federally

licensed and permitted projects that require final determination between now and

when the Rule is finally revised in 2023 at the earliest, at least two years from now.

The more disruptive outcome would be for stakeholders to continue to adjust to the

still-new Rule, all the while knowing that it is very likely to be drastically changed

in a few years. By vacating the Rule, this Court would restore the familiar regulatory

landscape that existed approximately ten months ago, and for fifty years before that.

Finally, vacatur is a remedy within this court's equitable discretion, and

"vacation of an agency action without an express determination on the merits is well

within the bounds of traditional equity jurisdiction." *Ctr. for Native Ecosystems v.*

*Salazar*, 795 F. Supp. 2d 1236, 1241–42 (D. Colo. 2011). *See also WaterLegacy v.*

*U.S. Envt'l Prot. Agency*, 300 F.R.D. 332, 346 (D. Minn. 2014) (considering

information submitted by parties in support of remand may inform a determination

on the first factor of the *Allied-Signal* test even in the absence of a decision on the merits). Accordingly, EPA's request for voluntary remand should only be granted if the Rule is also vacated, to avoid unduly prejudicing plaintiffs. *See Utility Solid Waste*, 901 F.3d at 436.

**B. Remand without vacating the Rule would unduly prejudice Plaintiffs, and, absent vacatur, the case should proceed to the merits.**

Federal courts "commonly grant [motions for voluntary remand], preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete," *Ethyl Corp v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993). An agency must "profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge that is the subject of the legal challenge." *Limnia*, 827 F.3d at 387.

A necessary factor in deciding whether to grant a motion for voluntary remand is "whether remand would unduly prejudice the non-moving party." *Utility Solid Waste*, 901 F.3d at 436. Courts have used their discretion to deny voluntary remand where such remand was "in name only," and where the nonmoving party's "position [would be] the same as if its case had been dismissed on the merits." *Limnia*, 827 F.3d at 388.

Without vacatur of the Rule, EPA is essentially asking this Court to keep Plaintiffs "between a remand and a hard place"—to deal with the harms inflicted by

the Rule for *at least* another two years before EPA's reconsideration of the Rule could *potentially* ameliorate those harms. *Id. See also Citizens Against Pellissippi Pkwy. Extension, Inc. v. Mineta*, 375 F.3d 412, 418 (6th Cir. 2004) (recognizing that duration of reconsideration process is a relevant consideration in determining prejudice to the nonmoving party); *Chlorine Chemistry Coun. v. Envt'l Prot. Agency*, 206 F.3d 1286, 1288 (D.C. Cir. 2000) (recounting an earlier denial of a motion for voluntary remand because "EPA made no offer to vacate the rule" and "EPA's proposal would have left petitioners subject to a rule they claimed was invalid").

Defendants assert that the prejudice Plaintiffs will suffer as a result of keeping the Rule in place for at least two more years is "too abstract" to outweigh the benefits of remand, and that EPA intends to mitigate or eliminate any potential harms of the Rule by "providing technical assistance" throughout the Rule's implementation. (ECF No. 67 at 11). In support of this argument, Defendants cite to *American Forest Resource Council v. Ashe*, a case involving a challenge to the U.S. Fish and Wildlife Service's critical habitat designation for the marbled murrelet. 946 F. Supp. 2d 1 (D.D.C. 2013). There, the Fish and Wildlife Service sought a voluntary remand without vacatur, and plaintiffs opposed the request on the basis that the continued enforcement of the marbled murrelet's critical habitat would prejudice its interests in harvesting timber. *Id.* at 42–43. Importantly, plaintiffs in *American Forest*

12

*Resource Council* did not argue that remand should be with vacatur, so the court explicitly ruled out vacatur as an option to remedy any undue prejudice. 946 F. Supp. 2d at 42. *See also* discussion, *infra*.

The District Court of the District of Columbia discounted plaintiffs' arguments regarding undue prejudice, concluding that the economic costs of complying with the Endangered Species Act were speculative, and that the plaintiffs could not identify any particular project impacted by the designation. *Id.* at 43–44. As a result, that court concluded that "the ill-defined prejudice to [plaintiffs'] timber interests" did not outweigh the "certain benefits to be gained by avoiding further litigation." *Id.* at 47.

This Court rejected a nearly identical line of reasoning in Judge Baylson's December 18, 2020 opinion ruling on Defendants' motion to dismiss. That opinion noted the substantially increased risk that Federally licensed and permitted projects will degrade the resources of the Delaware River watershed, and the curtailment of Plaintiffs' ability to advocate for greater environmental protections in the § 401 certification process and to participate in the pollution control efforts of certifying authorities and found a "substantial threat of real harm" to Plaintiffs. (ECF No. 46 at 7). The opinion highlighted that the Rule "is both a substantive and a procedural rule which applies to *all projects going forward*" and that, accordingly, Plaintiffs' harms are not abstract and speculative. (ECF No. 46 at 10).

13

Plaintiffs do not seek to turn judicial review "into a game in which an agency is 'punished' for procedural omissions by being forced to defend them well after the agency has decided to reconsider." *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015) (quoting *Citizens Against Pellissippi Pkwy. Extension, Inc.*, 375 F.3d at 416). Instead, Plaintiffs agree that remand of the Rule is appropriate—with vacatur. Should this Court conclude that vacatur is not warranted, Plaintiffs request that Defendants' motion for voluntary remand be denied and that the parties be given the opportunity to confer and propose a summary judgment briefing schedule to promptly resolve this case in the public interest, in accordance with Judge Baylson's December 18, 2020 order. (ECF No. 47).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court grant Defendants' motion in part, remanding the Rule to EPA, but deny Defendants' request to leave the Rule in place and instead vacate the Rule. In the alternative, should this Court conclude that vacatur is not warranted, Plaintiffs oppose Defendant's motion and respectfully request that the case proceed to the merits.


Dated: July 22, 2021                    Respectfully submitted,


                                        /s/ Kacy C. Manahan
                                        Kacy C. Manahan, Esq.
                                        Pa. Attorney No. 329031

14

N.J. Attorney No. 2275122018
Delaware Riverkeeper Network
325 Canal Street, Suite 3701
Bristol, PA 19007
215-369-1188 x115
kacy@delawareriverkeeper.org

*Attorney for Plaintiffs Delaware Riverkeeper Network and the Delaware Riverkeeper, Maya van Rossum*

15